## EDGAR C. HALL *v.* STATE OF MARYLAND

[No. 609, September Term, 1971.]

*Decided May 18, 1972.*

The cause was argued before MORTON, ORTH and POW-ERS, JJ.

*Joseph F. Lentz, Jr.* for appellant.

*Harry A. E. Taylor, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton*

*B. Allen, State's Attorney for Baltimore City,* and *Charles O. Fisher, Jr., Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

Appellant was convicted of several violations of the lottery laws in a non-jury trial in the Criminal Court of Baltimore on August 13, 1971.

Certain property introduced in evidence by the State had been seized on February 17, 1971, in the execution of a search warrant issued that day. Appellant filed a pre-trial motion to suppress and exclude the evidence. His ground was that the affidavit supporting the application showed that when the officer heard the words that constituted the evidence of probable cause to justify the issuance of the search warrant, he was illegally upon the premises of the appellant. He does not argue that the facts in the affidavit, if legally obtained, failed to show probable cause.

The affidavit, made by Detective Bruce H. Hilgartner of the Baltimore Police Department, recited his observations of the premises 3807 Towanda Avenue, Baltimore, on February 10, 1971. He described the premises as a two-story brick row house with a porch front. The affiant went on to recite further observations of the premises on February 12, 1971. He said:

> "While on the detail between 12:50 p.m. and 1:20 p.m. this date I observed three unidentified colored males and two colored females go up to the front door of 3807 Towanda Avenue at intervals and each, after knocking, would be admitted to the premises by someone on the inside. These persons stayed inside only a short time, when they would come back out the front of 3807 Towanda Avenue and walk away, leaving the vicinity.
>
> About 1:24 p.m. after having walked up onto several porches in the 3800 block Towanda Ave-

nue pretending to be a door-to-door salesman, I went up on the porch of 3807 Towanda Avenue and was standing on same when a colored female approximately 30-35 years, 5'0", 130 lbs, who is herein known as the First woman and whom I had seen enter the front door of 3807 Towanda Avenue several minutes before, came back out the front door of 3807 Towanda Avenue and stood there holding the aluminum storm door open and talking to a male voice on the inside whom I was unable to see. After several words were exchanged I overheard the First woman state to the person inside 'Keep 720 in tomorrow and I'll stop by tomorrow night and pay you.' The First woman then closed the storm door and walked off of the porch and north on Towanda Avenue to Keyworth Ave. leaving the neighborhood."

At the pretrial hearing on the motion to suppress, the detective testified that when he heard the unidentified woman talking through the open door to someone inside the house, he was in fact standing on the porch of 3809 Towanda Avenue, next door, and not on the porch at 3807. He said the error was typographical, and put in evidence his handwritten offense report which recorded that he was on the porch of 3809. After recessing the hearing to a later date, the judge who heard the motion amended the affidavit to read 3809 Towanda Avenue, and denied the motion to suppress.

Appellant contends that the affidavit cannot be amended, but even if it were, it would show that the detective was a trespasser on the porch next door, and the conversation he heard was still an illegal seizure.

If we assume that the evidence at the hearing showed conclusively that the detective was in fact on the porch at 3809 Towanda when he heard the woman speaking, and that there was in fact a typographical error in the affidavit, the error is immaterial to the question. The ques-

tion is, "Was probable cause shown *at the time* the search warrant was issued?" It can be shown only by facts supplied to the issuing judge within the four corners of the affidavit. We said in *Dawson v. State,* 11 Md. App. 694, 276 A. 2d 680, at page 714:

> "The law has long been firmly settled that the court's consideration of the showing of probable cause will be confined solely to the four corners of the affidavit itself."

In *Dawson* we quoted from *Smith v. State,* 191 Md. 329, 62 A. 2d 287, where the Court of Appeals said, at page 335:

> "The better rule seems to be that the court's consideration of the showing of probable cause should be confined solely to the affidavit itself, and the truth of the alleged grounds stated in the affidavit cannot be controverted, as was done in the instant cases, by receiving the testimony of the accused and other witnesses."

In *Buckner v. State,* 11 Md. App. 55, 272 A. 2d 828, we said at pages 61 and 62:

> "When a search warrant is challenged, the lower court, and the appellate court when the determination of the lower court is before it on appeal, must look for probable cause only in the affidavit itself and may not go outside it. *Scarborough v. State,* 3 Md. App. 208. However the affidavit should be interpreted in a common-sense and not in a hypertechnical manner, and the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants."

But no matter how informal the language of an affidavit may be, and much latitude in this respect is permitted, the basic facts, as they are given, must be sufficient to support a finding of probable cause for the is-

suance of the warrant. If the facts as they are presented to the magistrate when the warrant is issued are not sufficient, then the warrant is illegal. It cannot be judged on any other facts, or as of any other time.

It can no more be made good by a subsequent showing of different facts than a good warrant can be made bad by a subsequent showing of different facts. The court had no power to amend the affidavit. We determine the validity of the warrant on the basis of the facts as they were shown in the affidavit as it was submitted to the magistrate.

Appellant says that the presence of the officer on either front porch was a trespass on the curtilage of private property, and therefore the conversation was unlawfully seized. He cites *Harris v. State,* 203 Md. 165, 99 A. 2d 725, in which the Court of Appeals said, at pages 169 and 170:

> "We also treat as settled law that a side alley, like a yard or lawn, if used as part of the 'curtilage', is within that protection. * * * We may grant too that the mere absence of a physical barrier, such as a fence, or door or gate, is not conclusive of the question as to whether the alley is a part of the curtilage, * * * for it is not uncommon in Baltimore City and elsewhere for the front or side yard or garden not to present a physical bar to strangers, yet the area is properly regarded as part of the home."

He also cites *Johnson v. State,* 2 Md. App. 300, 234 A. 2d 464, in which we said, at page 305:

> "If evidence of what was seen or heard is otherwise admissible, we think it clear that the determinant is whether such evidence was obtained by *physical* trespass or unlawful entry. If so, constitutional rights are violated, if not, constitutional rights are not violated."

Without detracting in the least from what was said in

those cases as applicable to observations of an accused, or the hearing of words spoken by an accused, the question of unlawful intrusion is not to be judged so much by physical boundaries of an area, but by what a person seeks to protect as private. In *Katz v. United States,* 389 U. S. 347, 19 L.Ed.2d 576, 88 S. Ct. 507, decided after *Harris* and *Johnson,* the Supreme Court considered the legality of a seizure of words spoken by the accused in a public telephone booth, by means of an electronic listening and recording device attached to the outside of the booth, with no physical intrusion into the area occupied by the accused. The Supreme Court said at page 351:

> "But this effort to decide whether or not a given 'area,' viewed in the abstract, is 'constitutionally protected' deflects attention from the problem presented by this case. For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. * * * But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."

The Supreme Court further said, at page 353:

> "But '[t]he premise that property interests control the right of the Government to search and seize has been discredited.' * * * Thus, although a closely divided Court supposed in Olmstead that surveillance without any trespass and without the seizure of any material object fell outside the ambit of the Constitution, we have since departed from the narrow view on which that decision rested. Indeed, we have expressly held that the Fourth Amendment governs not only the seizure of tangible items, but extends as well to the recording of oral statement, overheard without any 'technical trespass under . . . local property law.' * * * Once this much is acknowl-

edged, and once it is recognized that the Fourth Amendment protects people—and not simply 'areas'—against unreasonable searches and seizures, it becomes clear that the reach of that Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure."

The Fourth Amendment privacy with which we are concerned in this case protected the appellant, whether he was inside his house, on the front porch, or in a telephone booth at the corner. The words that the officer heard spoken by the unidentified woman, which she did not seek to preserve as private, spoken while she was in the officer's immediate presence on an open porch, do not have constitutional protection.

The judge who heard the motion to suppress correctly denied it. Under Maryland Rule 729 g 2, that ruling was binding at the trial unless the trial judge, in the exercise of his discretion granted a hearing *de novo* on the motion. The trial judge accepted the ruling as binding.

Appellant complains that the trial judge erred when he admitted in evidence over objection a telephone bill made out to appellant at the address where the arrest was made, showing the same telephone number which was on the telephone in the premises. The bill was dated in December, 1969, more than a year before the arrest, and appellant argues that it was too remote. Presumably the bill had probative value as identifying appellant with the premises and with what was found there. We think the bill was properly admitted, but in any event the officer testified that when he arrested appellant and advised him of his rights, appellant was the only person on the premises, and "said it was all his". There was no error in admitting the bill in evidence.

*Judgments affirmed.*
*Appellant to pay costs.*