## ALVIN E. GORDON ET AL. *v.* CONTRACTORS TRANSPORT CORPORATION ET AL.

[No. 588, September Term, 1972.]

*Decided July 5, 1973.*

The cause was argued before MOYLAN, POWERS and CARTER, JJ.

*Robert J. Stanford,* with whom was *Ernest C. Raskauskas* on the brief, for appellants.

*J. Joseph Barse* for appellee Contractors Transport Corporation and *Patrick J. Attridge* for other appellee.

MOYLAN, J., delivered the opinion of the Court.

On July 24, 1967, the appellants, Alvin E. Gordon and James Harkless, were employed by the Ledford Construction Company on a job in Bethesda, Maryland. The Ledford Company had been hired by the Potomac Electric Power Company to install electrical lines to connect with a new 17-story apartment building, the Willoughby. That project involved the digging of a ditch and the laying of an electrical conduit, lengths of round hollow pipes for electric cables. The conduit led to a new concrete vault or manhole. On July 24, the appellants were working in the manhole removing wooden flaring which had been installed to act as a plug to prevent cement, which had been poured around the conduit, from flowing into the manhole. In the process of removing cement from around the flare with a crowbar and hammer, two successive explosions occurred severely injuring both appellants.

A suit was filed in the Circuit Court for Montgomery County alleging that the explosion was caused by a crack in a cast iron gas main which released methane gas and that the gas traveled through the earth, entered the empty electrical conduit, and was ignited by air and a spark from the hammer and crowbar the appellants were using. It was further alleged that the crack occurred when a crane, owned by Williams Enterprises, Inc. and transported to the job site at the Willoughby by Contractors Transport Corporation, was negligently moved on the roadway above the gas main. The suit was filed against Contractors Transport, Inc., Williams Enterprises, Inc., Washington Gas Light Company, the general contractor for the Willoughby, a mechanical subcontractor, and a driver for Contractors Transport. At the conclusion of the plaintiffs' case,

a directed verdict was granted as to all parties except Williams and Contractors Transport.

The case consumed thirteen trial days from April 6 to April 26, 1972. On April 26, a jury returned a general verdict in favor of the defendants.

The appellants here raise three contentions:

1) That the selection of the panel from which the trial jury was drawn was improper;

2) That it was reversible error to permit two defense witnesses to render certain expert opinions; and

3) That the court erroneously refused to give further instructions to the jury.

On March 30, a week before the trial in the instant case was scheduled to commence, two groups of prospective jurors who were scheduled to sit for two-week periods in April were brought before Judge Plummer M. Shearin for indoctrination. The judge apprised the jurors at that time that a lengthy case (the present case) was scheduled to begin the following week which could require a jury to sit beyond the customary two-week period that jurors ordinarily sit in Montgomery County. The judge asked for volunteers from each group who would not be inconvenienced by the length of service. Forty persons subsequently volunteered. From these, the twelve jurors and two alternates were ultimately drawn at trial.

The appellants take exception to the manner in which those forty persons were selected. They complain that Maryland Code, Art. 51, Sec. 9 (a)(i) provides that a person summoned for jury service may be excused upon a showing of "undue hardship, extreme inconvenience, or public necessity" and that there was noncompliance with this provision, thereby "frustrating the statutory intent that there be a cross-section representation." They assert that the working man or woman was almost systematically excluded — "no one who would make any less money, no one who would expect even the mildest frown in his place of employment from his supervisor by virtue of his jury service, would be a likely member of a jury which tried this

case. No one except those who actively sought the amusement, entertainment, adventure or experience of a jury trial would be its probable members. Working men, as the plaintiffs are, would be the least likely type of juror to serve."

The appellants attacked the jury selection procedure for the first time in their motion for new trial. They claim that they did not discover the "systematic exclusion" until conversations with the jurors at the conclusion of the trial led to suspicion. Maryland Code, Art. 51, Sec. 10 (c) provides:

"Motion in civil cases. — In civil cases, before the voir dire examination begins, or within seven days after the party discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, any party may move to stay the proceedings on the ground of substantial failure to comply with the provisions of this article in selecting the petit jury."

We will not address ourselves to the question of whether the challenge was timely raised, in the unusual circumstances of this case, because, even if we were to assume that the issue were properly before us, we see nothing improper in the manner in which the panel was selected. First of all, appellants' reliance upon Sec. 9 (a)(i) is misplaced. That section specifies when a person summoned for jury service may be totally excused from service at that time. Secondly, the expressed preference of jurors as to time of service furnishes no grounds for a challenge to the array. See *People v. Chrisoulas*, 367 Ill. 85, 10 N.E.2d 382; Annotation, Validity and effect of plan or practice of consulting preferences of persons eligible for jury service as regards periods or times of service or character of actions, 112 A.L.R. 995; 47 Am.Jur.2d, *Jury*, Sec. 152. See also Art. 51, Sec. 4 (b)(vi), which provides that the "juror qualification form" shall elicit "the time when he (a juror) can most conveniently serve." We note, furthermore, that the assertions the appellants make regarding the membership of the panel are, to say the least, bold. There is nothing in the record to

support their allegations that working men, such as they, were systematically excluded, or that those persons that volunteered for the panel were unable to give the appellants a fair and impartial trial.

The appellants also contend that Donald Abrahams, the president of the appellee Contractors Transport Corporation, and Frank Williams, the president of the appellee Williams Enterprises, were erroneously allowed to testify as experts. At issue were the questions 1) of whether the 200,000 pound Manitowoc crane ever backed over the curb at the northeast corner of the intersection of Prospect Place and South High Street and 2) of whether the pressure exerted by the crane, if it did back over that curb, would have been sufficient to crack the cast iron gas pipe some three feet underground at or near that point. It was by no means established that the crane ever backed over that curb. Of 17 witnesses who testified about the liability aspect of the case, only the appellant James Harkless and his brother, Willie Harkless, ever testified that the crane moved over that area. Several fellow employees of the appellants, the appellant Alvin Gordon, and several residents of the neighborhood had all observed the movement of the crane at one time or another. None of them testified that he ever saw the crane go over the curb above where the cracked pipe was untimately found. There was, moreover, testimony from several witnesses who lived and worked in the neighborhood that gas odors had been smelled in the area and had been reported to the Gas Company prior to the arrival of the crane at the construction site. There was, furthermore, testimony that other construction vehicles, including heavy concrete trucks, had bounced off the curb in the area of the cracked pipe while cutting across the corner of the intersection in question. There was also received in evidence a photograph taken from the roof of the Willoughby several days prior to the accident, which showed a flatbed trailer truck carrying a 26-ton boiler parked directly over the area of the cracked pipe.

The appellants' expert, Joseph F. Gillman, testified as to the formula for determining the pressure exerted by an

object upon a given area on which that object rests. The formula, no more than an exercise in elementary physics and elementary arithmetic, consists of dividing the total weight of the object by the area with which the object is in contact. The testimony of Frank Williams was simply to the effect that the 200,000 pound crane was riding on two caterpillar tracks, that each track consisted of 52 individual pads, that each pad was 48 inches wide and 9 inches long, and that at any one time, 20 of these pads on each side of the crane, for a total of 40 pads, would be in actual contact with the ground. Counsel for all parties, the court, and indeed the jury, were able to do the multiplication which yielded 17,280 square inches in contact with the ground and were then able to do the division of 200,000 by 17,280 which yielded a result of 11.5 pounds of pressure per square inch. The testimony of Frank Williams was, moreover, not objected to by the appellants. When cross-examined by the appellants as to whether movement could affect the formula, Mr. Williams responded that the variation would be negligible because the crane moved so slowly that its movement could hardly be discerned. The short answer to the contention with respect to Frank Williams is that the appellants did not object to his testimony.

The testimony of Donald Abrahams was objected to, but we think it was equally innocuous. Although he testified as to the formula for calculating pressure per square inch, the formula was the same as that already testified to by the appellants' expert, Mr. Gillman. Mr. Abrahams simply supplied the data as to the weight of the boilers which his flatbed trailers carried over the questioned area and as to the amount of surface on the tires of the truck which would be in contact with the roadway at any one time. That data yielded a product of 32.4 pounds per square inch of pressure exerted by a flatbed trailer loaded with a 26-ton boiler. We cannot say that the trial judge abused his discretion in ruling that this testimony was non-expert within the contemplation of the law governing the offering of opinions by experts. The claim of the appellants that they were not forewarned about this testimony so that they could educate

themselves is not well taken. Prior to trial, the appellants' counsel were served with the trial brief of the appellee Williams Enterprises which stated:

> "Frank Williams will further testify to the pounds per square foot of pressure that the crane exerts on the ground, and also the pounds per square foot of pressure exerted by the tractor trailer units bearing the 26-ton boilers."

The appellants did, furthermore, actually offer rebuttal testimony with respect to this issue.

The appellants advance as a sub-contention the argument that their expert, Mr. Gillman, was discriminated against by having to undergo the qualification process as to his expertise whereas Mr. Abrahams and Mr. Williams were not subjected to such interrogation. The appellants' claim is that this discrimination manifested to the jury the fact that the court favored Mr. Abrahams and Mr. Williams over Mr. Gillman. The point is without merit. Mr. Gillman was, indeed, an expert witness and was properly subjected to the qualification process. As we have herein ruled, Mr. Abrahams and Mr. Williams did not testify as experts.

The appellants finally assign error in the refusal of the trial judge to give further instructions to the jury. Sometime after the jury had begun its deliberations, it sent a note to the trial judge asking a question regarding one of the instructions. The trial judge answered the note with the response that there would be no further instructions on that point. The note, together with the judge's answer written thereon, was shown to all respective counsel prior to its return to the jury. The appellants complain that the judge's refusal constituted reversible error.

We note that after the judge had instructed the jury prior to its retiring for deliberations, counsel for the appellants raised no objection to the charge. Maryland Rule 554 d and e. Furthermore, after the note, together with the response, was shown to counsel, no objection was made to the court's refusal to give futher instructions even though ample opportunity existed to do so. When the jury was called into

the courtroom on at least three occasions thereafter so that the court could ascertain its status, there was no objection whatsoever from counsel regarding the failure further to instruct. There is, therefore, nothing before us for review. Maryland Rule 1085.

*Judgments affirmed; costs to be paid by appellants.*