## BING FA YUEN AND SHUI PING WU *v.* STATE OF MARYLAND

[No. 1317, September Term, 1978.]

*Decided July 12, 1979.*

110

The cause was argued before MOORE, LOWE and MacDANIEL, JJ.

*Barry H. Helfand* for appellants.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Irma S. Raker, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Bing Fa Yuen and Shui Ping Wu were convicted by a jury in the Circuit Court for Montgomery County of extortion, *i.e.,* violating Md. Ann. Code art. 27, § 562. The indictments charged that they

> "did verbally threaten Raymond NMN Lee to do injury to the person and property of Raymond Lee and Kam Chu Kwong with a view to extort . . . ."

The initial contention of error, thought by appellants to have been committed at the trial, was the judge's refusal to grant a "missing witness" instruction because Kam Chu Kwong (referred to as Stella Kwong) was never produced by the State to testify; however, appellants' contentions are founded upon insubstantial support.

They begin by stating that:

> "The witness, Kwong, was named as a victim in the indictment."

As can be seen above, that is simply not correct. The *victim* of the crime was Raymond Lee, he who was threatened with a view to extort. Stella Kwong was never threatened with a view to extort although she was one of the subjects of threat and injury intended to coerce payment from Raymond Lee.

More significantly to the issue here, appellants next contend that:

> "She [Stella Kwong] was not accessible to counsel for two reasons: (1) She was in [under] the Federal Witness Protection Act, and (2) She refused to talk to counsel."

Apropos of the prerequisite to a right to a missing witness instruction, appellants conclude that

> "[t]he witness, almost a party, was therefore: (1) particularly available to the State, (2) her testimony concerned the basic issue in controversy, and (3) it would be natural for the party (State) to have called said witness in presenting its case. *Brooks v. Daley,* 242 Md. 185."

Preliminarily, we note that the record does not indicate, nor do appellants suggest, that Stella Kwong was ever directly threatened or "extorted." Her testimony would have at most been hearsay, repeating threats which Lee had told her were made to him. She was not, therefore, "almost a party," nor would her testimony concern "the basic issue in controversy" other than in a tangential and perhaps inadmissible fashion.

More significant from a legal view are appellants' contentions, based upon *Brooks v. Daley,* that Stella Kwong was "particularly available to the State" and that "it would be natural for the party (State) to have called" her. That is presumably an application of the rule appropriate to civil cases, but until *Christensen v. State,* 21 Md. App. 428 (1974), Maryland had never recognized the application of the rule to criminal cases.

Since our opinion in *Christensen* acknowledging the viability of the missing witness rule in criminal cases in Maryland, we have been deluged with every conceivable twist

invoking application of that permissible inference, notwithstanding the Court of Appeals' reversal of our opinion in that case upon its facts. *Christensen v. State,* 274 Md. 133 (1975). *See Pierce v. State,* 34 Md. App. 654, 658-659 (1977), *cert. denied,* 434 U. S. 907, 98 S. Ct. 307 (1977). In our *Christensen,* we definitionally relied upon the hoary Supreme Court case of *Graves v. United States,* 150 U. S. 118 (1893):

> " 'The rule even in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable.' *Graves v. United States,* 150 U. S. 118, 121." *Christensen v. State,* 21 Md. App. at 430.

The definition precludes from the rule's operation those witnesses whose production is not "peculiarly" within the power of the party against whom the inference may be drawn. *Graves v. United States,* 150 U. S. at 121. There is no such presumption or inference where the witness is available to both sides. *Christensen v. State,* 274 Md. at 134. Although Stella Kwong refused to speak with appellants' attorney before trial, appellants admitted at argument that they were aware of her availability through the State's Attorney's office. They did not choose to subpoena her presumably relying upon the fact that the State had indicated that she would be a witness. But Stella *was* available to them by subpoena and they cannot excuse their failure to subpoena her by claiming to have relied on the State's indication that she would be called. She was, therefore, "equally available" and so presumed unless appellants showed the court below that they had exhausted the avenues available to them to produce her. *See Christensen v. State,* 274 Md. 133.

Appellants added a final innovative twist to their requested instruction. They included the admonition to the jury that they should decide whether the rule should apply in this case at all.

"I would ask the Court to instruct the jury that

evidence has been presented in this trial which indicates that a valuable witness who has knowledge of the facts in issue in this case was not called to testify. You are instructed that if either the State or the Defendant failed to call such a presumption rises that his testimony would have been unfavorable to the party who did not call him. It is up to you to decide which party should have naturally called this witness. This rule does not apply where the testimony of an uncalled witness is purely cumulative and the witness is not in a better position to know the facts than those witnesses who were called, nor does the rule apply where the reasons for not calling the witness are reasonable and proper."

Initially, we note that the request was not directed specifically to the absence of Stella Kwong, it was a general statement, presumably, that the jury might apply the rule willy-nilly. Secondly, what is referred to as a presumption, here and in some of the cases, is really a permissible inference. The court cannot instruct a jury that it *must* presume unfavorable testimony upon the absence of a witness. The instruction — the *advisory* instruction in Maryland — is that the jury *may* infer. *See United States v. Stulga,* 584 F. 2d 142, 145 n. 1 (1978). The instruction becomes merely a highlighting of a significant void in a party's case; but even in the absence of an instruction, the jury is not precluded from so inferring. Inferences of all types are always available to the factfinders.[1]

The failure to grant an affirmative instruction does not remove the availability of the inference. As a consequence, whatever prejudice may usually come from not giving an advisory instruction is diminished, because the inferential

---

1. On the contrary, however, if a party proffers sufficient evidence to the court indicating unavailability of a witness otherwise "peculiarly" within its power to produce, an instruction must be given that "no inference should be drawn by the failure . . . to call [that person] as a witness." Christensen v. State, 274 Md. at 141. The failure of a trial judge to grant the requested instruction is prejudicial error. *Id.* That case provides guidance for the granting of a preclusory instruction; however, we are concerned here with when a defendant will be prejudiced by a refusal to give a highlighting instruction stating that the inference is available.

thought process is still available. The prejudice is simply that such an inference is not given preferred instructional attention over any other inferences available from the testimony or absence of testimony.

Possibly for that reason, judges hesitate to grant the missing witness instruction; they do not wish to emphasize one legitimate inference over all others which the jurors have been told are solely within their judgment. It is also for that reason that the right to a missing witness instruction is circumscribed with the limitations, inter alia, that the testimony or evidence must be material, noncumulative and the witness "peculiarly" available. The judge must find all of these criteria applicable before he highlights the absence of the witness. In most instances, emphasis of one possible inference out of all the rest by a trial judge can be devastatingly influential upon a jury although unintentionally so. We see no error in the case before us.

The second question asked by appellants is:

"Did the Trial Court commit reversible error by refusing to inspect the State's Attorney's file plus police reports and investigative notes, not only after proper motion but after a prior promise to do so?"

The question asks too much. Appellants are neither entitled to such judicial discovery, nor did the court promise it.

Prior to and during trial, appellants sought discovery of *statements* made by witnesses or potential witnesses. Apparently with the possible exception of a statement of Stella Kwong, the specific material requested was given to appellants before the end of the trial.

Relying primarily on *Brady v. Maryland,* 373 U. S. 83 (1963), appellants contend that it was error for the trial court to refuse to examine, post-trial, the entire file of the State's Attorney, the police reports and investigative reports for discoverable evidence.

The issue took shape during the examination of the witness Hang Sang Leong. According to appellants' brief:

"After direct but before cross-examination, defense

counsel asked the Court *to compel the State to produce any statement made by this witness* so that counsel could cross-examine and determine if there was any exculpatory information or if there was any inconsistency of statements. The State was under a duty to supply counsel with *Brady v. Maryland* information. Counsel again pointed out that later in the trial the State was going to call her and Kwong and further that counsel wished to see *their respective statements.* [emphasis added].

To this, the court replied at T. 202: [2]

> THE COURT: Well, it is up to you. As I said before, I am not going to get into a position of ordering the State to produce *statements.* But if the trial results in a conviction I will examine those *statements* in camera. If there are inconsistent statements in them I will declare a mistrial." (emphasis added).

However, appellants' very next sentence concedes that:

> "At T. 203, the copies were supplied and a Detective Stone's notes were supplied."

It is apparent then that appellants have no complaint as to the requested statement of Leong.

They go on to complain that when Raymond Lee was called, their request for Lee's statement was initially denied, but was, presumably, voluntarily turned over on the next day of trial. According to appellants, however,

> "[t]he statement was given too late to benefit counsel."

Yet appellants made no effort to obtain a continuance or to recall the witness.

The thrust of appellants' contention seems to be that the judge violated a promise to investigate, post-trial, all of the

---

2. Reference to the transcript of the trial proceedings.

State's files and notes. That is simply not so. The judge promised to examine "statements" in camera, meaning those statements requested at the time, *i.e.,* Hang Sang Leong's, Raymond Lee's and Stella Kwong's. Appellants received two of these statements and predicated their demand for the other upon Stella being called as a witness.[3] In short, the judge complied with that which he promised.

Beyond that, appellants really received more than that to which they were entitled. Relying on *Brady,* they are in reality trying to invoke (or exceed) a *Jencks*[4] discovery rule for Maryland, something we have expressly declined in the past. *Carr v. State,* 39 Md. App. 478, 481-482 (1978). Although the Court of Appeals' reversal of our *Carr* in 284 Md. 455 (1979), carried us somewhat closer to Jencks than we had formerly thought, the Court of Appeals did not extend criminal discovery or *Brady* demands to "fishing expeditions" or require prosecutorial open files. *Id.* at 470-472. The extent of disclosure by the Court of Appeals seemed to hold with the *United States v. Agurs,* 427 U. S. 97 (1976), that disclosure is only required in three situations: 1) where the undisclosed evidence includes perjured testimony, knowledge of which is charged to the prosecution; 2) specific evidence, strictly material that might have affected the outcome of the case; 3) "The Court rejected a standard of requiring disclosure of 'everything that might influence a jury' because 'the only way a prosecutor could [then] discharge his duty would be to allow complete discovery of his files as a matter of routine practice.'" *Carr v. State,* 284 Md. at 464-465. That certainly lays to rest the broad demand allegation expressed in appellants' question.

As to the statement of Stella Kwong, appellants strain mightily to fall under the *Brady* umbrella, but the absurdity of considering this as a *Brady* issue is self-evident. The

---

3. "MR. HELFAND [defense counsel]: Yes, if the police department had taken a statement from this witness and, particularly, Mr. Lee and Stella later will be called, and who have refused to talk to me, and have been under government protection, and I am entitled to see that statement before I even attempt to cross examine.

I can't see how that could hurt."

4. Jencks v. United States, 353 U. S. 657 (1957).

appellants have not alluded to any evidence or testimony that was 1) material, 2) demonstrably favorable, or 3) that was not already known to them — three more essential prerequisites to the successful invocation of the *Brady* doctrine. *Moore v. Illinois,* 408 U. S. 786 (1972); *Younie v. State,* 19 Md. App. 439 (1973). Even under discovery rules it would fall within the discretionary category, *see Kardy v. Shook, J.,* 237 Md. 524, 540-541 (1965) (citing *Whittle v. Munshower,* 221 Md. 258, 261 (1959), although new Md. Rule 741 liberalized its predecessor (Md. Rule 728).

> "It does not, however, make specifically available to defense counsel any statements made by witnesses." *Carr v. State,* 284 Md. at 470-471.

Clearly then, it does not make available statements of non-witnesses. There was no promise. There was no *Brady* violation. There was no error.

The third issue gives us considerably more procedural concern.

> "Did the Trial Court commit reversible error in refusing to allow defense counsel the opportunity to read to the jury accurate quotations from the transcript which had been prepared by the court reporter and supplied to counsel with daily copy?"

Because appellants did not have the closing argument transcribed for the record, we are unable to determine what, if any, effect this denial may have had. *Blizzard v. State,* 30 Md. App. 156, 169-170 (1976), *rev'd on other grounds,* 278 Md. 556 (1976); Md. Rule 1224 d 1; *see also White v. State,* 8 Md. App. 51, 54 (1969). That a request was generally denied is clear from what was transcribed for the record, however. *Cf. Sergeant Co. v. Pickett,* 283 Md. 284 (1978).

Actually the issue was fomented by and the request denied first to the State's Attorney. Inferentially, appellants joined the request but along with the State, fell in the general denial.

> "MS. RAKER: [prosecuting attorney]: I have one last question with respect to argument before the jury.

We all know the jury's recollection controls and that they are the judges solely of the law and the facts. I would indicate to the Court that both Mr. Helfand and I have during the course of the trial ordered testimony of certain of the witnesses. It is my understanding that it is inappropriate to read from a transcript indicating that that is the official record, or that —

THE COURT: Yes, I do not permit that.

MR. HELFAND: Even with a comment that it is their recollection, but we have had it typed and it is —

THE COURT: I'm not going to permit you to read the transcript of the proceedings. You can take exception to that if you wish.

MR. HELFAND: I would like to now and not have to do it later.

THE COURT: All right.

(Whereupon, jury enters the courtroom.)"

Our concern is the jealousy with which we attempt to safeguard a broad right of argument to counsel. *See Wilhelm v. State,* 272 Md. 404 (1974). We agree with the State's well researched conclusion that most courts regard the propriety of reading portions of the transcript as resting within the sound discretion of the trial court. In light of the discretionary right for a court to read excerpts to the jury itself, Md. Rule 758 c; *Veney v. State,* 251 Md. 159, 172-173 (1968), it follows that such discretion to read may be delegated to counsel. Maryland obviously is in line with the courts regarding the right to read as a discretionary one. That discretion, however, must not be exercised arbitrarily so as to automatically preclude even a consideration of reading excerpts from the transcript.

For us to determine whether the stilted refusal here was an abuse, there should be some further proffer to indicate to the court that which is to be read, the purpose for the request and the need as seen by the party making the request. Just

as discretion should not be arbitrarily withheld, it can not be unexplainedly demanded. We have indicated in the past that despite our general anxiety in providing breadth of argument,

> "trial judges should be vigilant gently to excise blatantly irrelevant attempts by counsel to beguile jurors." *Pierce v. State,* 34 Md. App. 654, 670 (1977).

Without some explanation accompanying the request, a trial judge can make no judgment on the validity of the use of reading from a transcript. Care must be used in permitting out of context reading of what purports to be an official record of what was said, but that concern may be alleviated by an appropriate instructional admonition.

Furthermore, as we have noted, without such proffer and without the context of the argument in which to view the discretionary withholding, we are unable to determine what harm may have been done by declining the request. For discretion to be abused, it must be harmful in the context of its exercise. *Worthen v. State,* 42 Md. App. 20 (1979). There is no contextually inferable harm indicated here even if a proffer had indicated an erroneous denial. If there had been error it was obviously harmless. *Dorsey v. State,* 276 Md. 638 (1976).

The final issue we will mention has no merit at all.

> "Did the Trial Court commit reversible error by denying the appellants' prohibitive preliminary motion in limine?"

Appellants have waived this issue by failing to object as the testimony which they sought to preclude came in during the trial of the case. *Sutton v. State,* 25 Md. App. 309, 316 (1975). "[T]here is substantial authority for the proposition that the denial of a motion *in limine* cannot in and of itself constitute reversible error." *Ory v. Libersky,* 40 Md. App. 151, 164 (1978). We will not deviate from that position in the present case.

*Judgments affirmed.*
*Costs to be paid by appellants.*