491 A.2d 1199

**Malcolm Edward YEAGY**

v.

**STATE of Maryland.**

**No. 580, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

May 9, 1985.

2

4

Marvin D. Miller, Alexandria, Va. (Lewis C. Metzner, Hagerstown, on the brief), for appellant.

Valerie Johnston Smith, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, M. Kenneth Long, Jr., State's Atty. and Andrew Norman, Asst. State's Atty. for Washington County, Hagerstown, on the brief), for appellee.

Argued before BISHOP, ALPERT and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

Malcolm Edward Yeagy was tried and convicted by a jury in the Circuit Court for Washington County on charges of distributing cocaine and possessing cocaine hashish, marijuana and drug paraphernalia. He was acquitted of charges of maintaining a common nuisance. The indictments were based on two incidents: (1) the sale of cocaine Yeagy made on April 20, 1983, and (2) the possession of items seized in the execution of a search warrant on May 17, 1983. Yeagy was sentenced to a total of eight years imprisonment.

In this appeal, Yeagy claims:

1. The search and seizure was illegal because the search warrant was based on stale probable cause;

2. The prosecution withheld exculpatory evidence in violation of the Due Process Clause; and

3. The trial court erred in allowing a police officer to give his opinion, because he did not qualify as an expert.

We will include the relevant facts in our discussion of each issue.

## THE SEARCH WARRANT

In April 1983, Gregory Bartles graduated from the police academy and joined the Hagerstown Police Department. He was assigned to the Narcotics Division and was instructed to attempt to purchase cocaine from Yeagy. Officer Bartles went to some nightclubs in the area, hoping to meet Yeagy. After several unsuccessful trips, however, Bartles approached Yeagy at home on April 20, 1983.

Bartles introduced himself to Yeagy as a former acquaintance. Yeagy did not seem to recognize Bartles, but invited him inside. The officer told Yeagy that he wanted to buy some cocaine "to impress some girls." What took place next remains uncertain: Bartles claims Yeagy agreed to make the sale without hesitation; Yeagy contends he initially refused to sell any cocaine, and only after Bartles persisted did he consent to share the one gram he had for personal use. Yeagy sold one-half of the gram to Bartles for $40, which he claimed was half of what he paid for the full gram.

During the following sixteen days, Bartles contacted Yeagy on several occasions trying to purchase cocaine. Each time, Yeagy stated he had none and told Bartles to talk to him at a later date. On April 30, 1983, when Bartles approached him, Yeagy indicated that he had cleared his house of all drugs. Later, on May 5, 1983, he told Bartles he was not selling any drugs.

On May 6, 1983, the officers involved in the investigation submitted an application for a warrant to search Yeagy's

home. The affidavit contained a brief description of the sale that occurred on April 20, 1983, between Yeagy and Bartles. It did not indicate, however, that subsequent attempts to purchase cocaine from Yeagy had been unsuccessful, that Yeagy said he had cleared his house of drugs, and that at least one police surveillance showed no illegal activity.

The court found probable cause to issue the warrant based on the affidavit. After further surveillance, the police conducted the search on May 17, 1983, and seized various items of drug paraphernalia and controlled dangerous substances located throughout the home.

Prior to trial, Yeagy filed motions to suppress tangible evidence as well as oral and written statements. At the hearing, on November 7, 1983, Yeagy explained that his request to suppress the tangible evidence was based on the stale probable cause for the search warrant and the material omissions in the supporting affidavit which rendered it false under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). These motions were denied.

Appellant argues on appeal that the search and seizure were illegal because

1. [o]missions from the warrant affidavit constituted material misrepresentations;

2. [t]he warrant affidavit contained stale information; and

3. [t]he eleven-day delay between the issuance and execution of the warrant rendered the probable cause stale.

For reasons which we will explain, we affirm the judgments.

### Material Misrepresentation

The United States Supreme Court held in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978):

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentional-

ly, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155–56, 98 S.Ct. at 2676.

Many courts have applied this rationale to omissions as well as misstatements. *See, e.g., United States v. Melvin,* 596 F.2d 492, 498–500 (1st Cir.), *cert. denied,* 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979); *United States v. Vazquez,* 605 F.2d 1269, 1282 (2d Cir.), *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979); *United States v. Martin,* 615 F.2d 318, 328 (5th Cir.1980); *United States v. House,* 604 F.2d 1135, 1141 n. 9 (8th Cir.1979), *cert. denied,* 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980); *United States v. Flores,* 679 F.2d 173, 176 n. 1 (9th Cir.1982), *cert. denied,* 459 U.S. 1148, 103 S.Ct. 791, 74 L.Ed.2d 996 (1983). In effect,

"[a] magistrate cannot adequately determine the existence of probable cause with the requisite judicial neutrality and independence if the police provide him or her with a false, misleading, or partial statement of the relevant facts ... but we will not invalidate a search warrant unless the omissions were material." *United States v. Flores, supra.*

To challenge an omission under *Franks, supra,* the accused must make a preliminary showing that it was made intentionally or with reckless disregard for accuracy; a negligent or innocent mistake does not suffice. *United States v. Martin,* 615 F.2d at 329; *United States v. House,* 604 F.2d at 1139. This must be established by a preponderance of the evidence. Once this burden is met, the court conducts a further evidentiary hearing and considers whether probable cause would exist if the omitted information were included. *United States v. Martin,* 615 F.2d at 328; *United States v. House,* 604 F.2d at 1139. If probable cause would no longer exist, the warrant issued pursuant to the affidavit becomes invalid. *United States v. House,*

*supra; United States v. Flores,* 679 F.2d at 176, quoting *United States v. Maher,* 645 F.2d 780, 782 (9th Cir.1981) ("[e]ven a deliberate falsehood must be material in order to justify invalidating a warrant.").

In the case *sub judice,* appellant sought to suppress the evidence seized in the search on May 17, 1983, because the affidavit violated *Franks v. Delaware, supra.* Specifically, it omitted events allegedly taking place after April 20, such as: (1) his repeated refusals to sell drugs to Bartles; (2) the lack of a pattern of sale or use, i.e., traffic in and out of his house; (3) appellant's assertion that he had cleaned his house of drugs; and (4) the lack of any mention of his possession of drugs in a quantity other than for personal use. Also, the affidavit did not mention any incriminating evidence, or lack thereof, from the alleged one-year investigation prior to the search and appellant's arrest. Appellant argued that the absence of this information from the affidavit constituted a material misrepresentation by the State in that its inclusion would have shown that probable cause had become stale. This prevented the court from making a disinterested evaluation.

After hearing testimony concerning these allegations, the court addressed both the preliminary issue of whether a *Franks* hearing was appropriate and, if so, whether probable cause continued to exist. The court explained:

"I don't think that it needs to be addressed. I didn't hear any testimony today that would indicate to the Court that any of the affiants in the application for search and seizure warrant intentionally misled the issuing Judge by making any false statements within the application and that is what Frank [sic] does deal with intentionally misleading the Court by making false statements known to be false with the intent again to mislead the Court in the issuance of the Warrant. I don't find any of that in this case and so I see no reason to go further as far as omissions are concerned. I also don't think the issuing Judge was intentionally misled by any omissions. You know the statements that were conversations that were

testified to here are more damaging to the Defendant than they are to the State and I think you acknowledged that when you say that part of your argument was to suppress those statements. I don't see where probable cause that existed on April 20th would have been any way eliminated, alleviated or lessened by presentation to Judge Moylan of what happened in conversations on April 24th and April 25th and April 30th."

■ From the fact that the trial court heard evidence concerning the omitted information, we can infer that appellant met his initial burden of proof. Thus, we will review whether the court erred in finding that probable cause continued to exist even if the omitted information had been included in the affidavit. *Martin, supra; House, supra;* Md.Rule 1086.

Appellant contends that the items were material, because they tended to render probable cause stale. *See Kennedy v. Crouch,* 191 Md. 580, 585, 62 A.2d 582 (1948) (to be material, evidence "must tend either to establish or disprove" the issues). Our review of the record, however, indicates that the evidence supports the trial court's decision.

■ Even though appellant sold no cocaine to Bartles on April 24 and 25, 1983, claiming he had none to sell, on each occasion he told Bartles he would have some soon and to contact him later. This implied that he was continuously replenishing his supply and distributing it. *See Peterson v. State,* 281 Md. 309, 379 A.2d 164 (1977). Furthermore, on April 30, 1983, appellant said he had cleared his house of drugs, not related paraphernalia. In light of this evidence, the court could and did find that probable cause existed both with and without the omitted facts; hence, the omissions were not material. We agree.

### Stale Probable Cause

■ Upon application for a search warrant, the court determines from the information in the affidavit whether it

appears probable that "contraband or evidence of a crime will be found in a particular place." *Brown v. State,* 57 Md.App. 186, 189, 469 A.2d 865 (1984), quoting *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Probable cause to support the issuance of a warrant involves "less than certainty of proof, but more than suspicion or possibility." *Peterson v. State,* 281 Md. 309, 313, 379 A.2d 164 (1977), *cert. denied,* 435 U.S. 945, 98 S.Ct. 1528, 55 L.Ed.2d 542 (1978), quoting *State v. Edwards,* 266 Md. 515, 519, 295 A.2d 465 (1972).

Even though probable cause may exist initially, it becomes stale when the facts and information in the affidavit are "so remote from the date of the affidavit as to render it improbable that the alleged violation of law authorizing the search was extant at the time the application for the search warrant was made." *Peterson,* 281 Md. at 314, 379 A.2d 164, quoting *Garza v. State,* 120 Tex.Cr.R. 147, 149, 48 S.W.2d 625 (1932). Remoteness does not depend solely upon the lapse of a particular amount of time, such as ten days, or two months; it requires a determination of the "likelihood that the evidence sought is still in place" in light of "the character of the crime . . . of the criminal . . . of the thing to be seized . . . of the place to be searched. . . ." *Andresen v. State,* 24 Md.App. 128, 172, 331 A.2d 78, *cert. denied,* 274 Md. 725 (1975), *aff'd.,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Davidson v. State,* 54 Md.App. 323, 331–32, 458 A.2d 875 (1983).

Based on this standard, the Court of Appeals in *Peterson v. State, supra,* affirmed the validity of a warrant issued about one month after the last-mentioned sale of narcotics by the defendant.[1] In that case, the affidavit specified purchases by informants and observations by policemen of "four known users of narcotics enter[ing] Appellant's apart-

---

1. This information was received during the week of November 23, 1974; an informant provided further information in the week of December 21, 1974. Police applied for the warrant on December 29, 1974, and executed it on December 30, 1974.

ment and remain[ing] for short periods of time;" this occurred over the course of about three months. *Id.* 281 Md. at 320–21, 379 A.2d 164. The Court noted the regenerating nature of traffic in drugs and that the information in the warrant indicated "a persistent pattern of criminal involvement relating to narcotic drugs." *Id.* at 321, 379 A.2d 164. It, therefore, held that probable cause had not become stale. *Id.* at 322, 379 A.2d 164.

Similarly, in *Johnson v. State*, 14 Md.App. 721, 288 A.2d 622, *cert. denied*, 266 Md. 738, *cert. denied*, 409 U.S. 1039, 93 S.Ct. 517, 34 L.Ed.2d 487 (1972), this Court upheld the validity of a warrant issued twenty-six days after the facts and circumstances that formed probable cause. Despite the time lapse, the observation involved an informant who accompanied Johnson when he was "making his rounds to determine who was to be re-supplied with narcotics." *Id.* at 730, 288 A.2d 622. Johnson returned home with "five to eight bundles of glassine bags containing the suspected heroin." *Id.* According to this Court, "[t]he activity ... suggest[ed] a continuing business in the distribution of narcotics." *Id.*

In the case *sub judice*, the affidavit stated in pertinent part:

"On 15 April 1983, your co-affiants (Bakner and Sheppard) were contacted at the Hagerstown Police Department by your co-affiant Gregory L. Bartles # 66. At this time, your co-affiant Bartles, inquired as to whether the co-affiants (Bakner and Sheppard) had knowledge of a person by the name of "Sonny" Yeagy selling cocaine.

"Your co-affiants (Bakner and Sheppard), work Narcotics Enforcement at the Hagerstown Police Department. During the course of investigations over the past year, your co-affiants have received information in regards to "Sonny" (Malcolm Edward Yeagy), being involved in the distribution of cocaine. Information has also been brought to your co-affiants (Bakner and Sheppard) as to Yeagy being a known user of cocaine.

"Your co-affiant Bartles, was advised of this information, and affiant Bartles stated he had personal knowledge of Yeagy dealing cocaine over a year ago. Affiant Bartles had been at Plum's on the Dual Hwy, and had witnessed Yeagy dispense cocaine to two females. Yeagy also offerred [sic] to give affiant Bartles cocaine at this same time. Affiant Bartles conferred with co-affiants Bakner and Sheppard and it was agreed, Affiant Bartles would attempt to make a buy of cocaine from Malcolm Edward Yeagy.

"On 17 April 1983, affiant Bartles entered the Venice Inn Lounge. At 2210 hrs. on this date affiant Bartles engaged in a conversation at this location with a person known to him as Joe Sullivan. Your co-affiant Bartles, had prior knowledge that Joe Sullivan was a user of cocaine. During the course of the conversation between affiant Bartles and Joe Sullivan; affiant Bartles asked him if he knew where affiant Bartles could buy some toot (toot is street jargon for the drug cocaine). Joe Sullivan's reply was—I don't deal but I like to party. Sullivan then recommended the [sic] affiant Bartles to get in touch with "Sonny". He further stated affiant Bartles should either call Sonny or go to his house in Mapleville. Joe also stated—"Sonny always has some stuff (cocaine)." Your co-affiant Bartles knows "Sonny" to be Malcolm Edward Yeagy.

"On 19 April 1983, your co-affiants (Bakner and Sheppard) contacted co-affiant Deputy Richard Good of the Washington County Sheriff's Department. At this meeting co-affiant Good was made aware of the investigation involving Malcolm Edward Yeagy. The reason for this meeting was due to the fact the investigation was leading into the county area. This is Affiant Good's jurisdiction. All information was exchanged between your affiants in reference to the investigation.

"Your affiants (Bakner and Sheppard) conducted a check through the department of motor vehicle administration computer, for vehicles listed to Malcolm Edward

Yeagy. This revealed a 1976 Dodge Van Md. Tag H58389 registered to Malcolm Edward Yeagy and showed an address of Rt. 2 Box 62 Boonsboro, Md. 21713. This vehicle has been observed by your co-affiants (Bakner and Sheppard) being driven by Sonny Yeagy, and it is Yellow in color. Your affiants (Bakner and Sheppard) also made contact with a postal employee at the Boonsboro Md. Post Office by public service. This contact revealed Malcolm and Cheryl Yeagy were both receiving mail at Rt. 2 Box 62 Boonsboro, Md. address. Rt. 2 Box 62 Boonsboro, Md. is actually located on Rt. 66 Mapleville, Md.

"On 20 April 1983, at 1812 hrs., your co-affiant Bartles proceeded to Malcolm Edward Yeagy's residence in Mapleville, Md. This address is listed as Rt. 2 Box 62 Boonsboro, Md. Affiant Bartles, had prior knowledge of a vehicle (yellow van) belonging to Yeagy. This vehicle (yellow van) was located in the driveway of a residence in Mapleville, Md. Affiant Bartles, knocked on the front door, and was greeted by Malcolm Edward Yeagy, also known as Sonny. He was asked inside the residence by Sonny and a short conversation took place between affiant Bartles and Sonny Yeagy. During this conversation it was agreed that Sonny Yeagy, would sell affiant Bartles a ½ gram packet of cocaine for $40.00. Affiant Bartles waited in the living room of the residence as Sonny went up stairs to "Grind" the cocaine. The term "Grind" is known to all of your affiants as street jargon meaning to refine the cocaine for the purpose of inhaling. Yeagy remained in the upstairs of the residence for (4) minutes and returned to the living room area where affiant Bartles was waiting. Sonny gave a small packet (marked GEM PACS) to your affiant Bartles, stating "Here it is." Your affiant Bartles took the packet and in return gave Sonny (2) twenty dollar bills, serial numbers E11903349A and C25578959A. Affiant Bartles left the residence.

"Affiant Bartles, proceeded to the Hagerstown Police Department where he made contact with affiant Sheppard. A field test was conducted on the suspected cocaine. This field test revealed a positive reading for cocaine. The cocaine was placed into evidence.

"Based on the purchase of Cocaine by affiant Bartles, and your affiants experience and expertise, it is believed that probable cause exists to believe that Controlled Dangerous Substances, in violation of the Annotated Code of Maryland Article 27 Sections 276–303, are being kept, stored, and distributed by Malcolm Edward Yeagy from his residence at Rt. 2 Box 62, Boonsboro, Maryland 21713.

"Therefore, your affiants respectfully pray that a search and seizure warrant be issued for the person of Malcolm Edward Yeagy, and the residence of Rt. 2 Box 62, Boonsboro, Maryland 21713."

The determination of whether an affidavit is sufficient to show probable cause is confined to the face of the affidavit. *Carter v. State*, 274 Md. 411, 439, 337 A.2d 415 (1975); *Hall v. State*, 15 Md.App. 363, 367–68, 290 A.2d 803, *cert. denied*, 266 Md. 737 (1972), *cert. denied*, 411 U.S. 907, 93 S.Ct. 1534, 36 L.Ed.2d 196 (1973); *Burrell v. State*, 207 Md. 278, 280, 113 A.2d 884 (1955). This review differs after a *Franks* evidentiary hearing in which a violation is held to exist. In that situation, the court must exclude or include the offending statement or omission, respectively, to determine whether probable cause exists.

The court did not limit its review to the affidavit, as evidenced by its Rulings on Motions:

"The test for staleness ... is whether the information constituting the probable cause in the search warrant affidavit is so remote from the date of the affidavit as to render it improbable that the alleged violation of law authorizing the search was extant at the time the application was made. In the instant case the probable cause

existed on April 20, 1983, conversations [2] with the defendant thereafter gave the police additional information that probable cause continued to exist, the application was made to Judge Moylan on May 6 and the warrant executed on May 17. The character of the crime, of the defendant, of the things to be seized, and of the place to be searched lead to the conclusion that probable cause continued to exist when the warrant was executed." (citations omitted.)

Because the court had found no violation of the *Franks* doctrine, it should not have considered the evidence from that hearing. As we will explain, however, the court did not err in finding probable cause.

■ The Court of Appeals, in *Peterson, supra*, recognized that narcotics traffic is a regenerating activity and that "the thing to be seized, while easily transferable, was just as easily replaced." *Id.* 281 Md. at 321, 379 A.2d 164. Thus, in the present case, the sale by appellant described in the affidavit supported a finding of probable cause. Moreover, as we noted in our discussion of the *Franks* doctrine, the inclusion of the conversations occurring on April 24, 25 and 30, 1983, did not eliminate probable cause. *See* n. 2.

### Delay in Execution of Search

Appellant also argues that the eleven-day delay between the issuance of the search warrant and its execution rendered probable cause stale. Not only is this incorrect, but it has no bearing on this case.

The warrant was issued on May 6, 1983, and carried out on May 17, 1983. Pursuant to Md.Code Ann., Art. 27, § 551(a) (1957, 1982 Repl.Vol.):

"[A]ny search or seizure under the authority of such search warrant, shall be made within 15 calendar days from the date of the issuance thereof and after the

---

**2.** These conversations occurred on April 24 and 25, and April 30, when appellant repeatedly refused to sell cocaine to Bartles and said he had cleared his house of all drugs.

expiration of the 15-day period said warrant shall be null and void."

As this Court stated in *Donaldson v. State*, 46 Md.App. 521, 420 A.2d 281 (1980), however, "the timeliness of the execution of the warrant is not measured by whether the delay was reasonable or unreasonable, but by whether the probable cause upon which the warrant was issued still existed at the time the warrant was executed." *Id.* at 531, 420 A.2d 281.

■■ The delay in this case does not constitute error. The warrant was executed within the 15-day period noted in Md.Code Ann., Art. 27, § 551, *supra.* Also, because the activity described was a continuing one, probable cause still existed. *See Donaldson, supra.*

We now turn to appellant's remaining arguments involving discovery and expert testimony.

## EXCULPATORY EVIDENCE

Prior to trial, Yeagy filed a Request for Discovery and Motion to Produce Documents, seeking material and information regarding the police investigation of his activities. The State refused to respond to several of the requests, and Yeagy moved to compel discovery. A hearing on the motion was held on October 4, 1983, and the trial court granted it in part and denied it in part.

Appellant claims that the requested information was material to his entrapment defense and to the mitigation of his punishment. He further asserts that the questions were sufficiently specific under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that the failure to grant the requests "might have affected the outcome of the trial." *United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342 (1976).

Before addressing these contentions, we will discuss briefly the applicable law.

The Supreme Court in *Brady v. Maryland, supra,* held that "the suppression by the prosecution of evidence favor-

able to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* 373 U.S. at 87, 83 S.Ct. at 1196–97. Later, in *United States v. Agurs, supra,* the Court explained that the rule stated in *Brady, supra,* applies to three types of situations, each of which "involves the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *Id.* at 103, 96 S.Ct. at 2397. Those instances are:

1. [w]hen "the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury."

2. [d]efendant made "a pretrial request for specific evidence."

3. [w]hen material in the hands of the prosecution is "obviously exculpatory."

*Id.* at 103–07, 96 S.Ct. at 2397–99.

 The appellate courts of this State have recognized that the defense must submit specific requests under the *Brady* decision. *Carr v. State,* 284 Md. 455, 465, 397 A.2d 606 (1979); *Peoples v. State,* 57 Md.App. 579, 588, 471 A.2d 327, *cert. denied,* 300 Md. 89, 475 A.2d 1201 (1984). When challenging the prosecution's refusal to disclose particular items, the defense must show that the evidence withheld by the State was "1) material, 2) demonstrably favorable, or 3) ... not already known to [the defense]." *Yuen v. State,* 43 Md.App. 109, 117, 403 A.2d 819, *cert. denied,* 286 Md. 756 (1979), *cert. denied,* 444 U.S. 1076, 100 S.Ct. 1024, 62 L.Ed.2d 759 (1980), citing *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), and *Younie v. State,* 19 Md.App. 439, 311 A.2d 798 (1973), *rev'd on other grounds,* 272 Md. 233, 322 A.2d 211 (1974).

In addition to case law, Md.Rule 741 a [3] requires the State to provide certain information to the defendant whether or not he requests it:

"1. Any material or information within his possession or control which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce his punishment therefor;

2. Any relevant material or information regarding: (a) specific searches and seizures, wire taps and eavesdropping, (b) the acquisition of statements made by the defendant, and (c) pretrial identification of the defendant by a witness for the State.

3. The State's Attorney's obligations under this section extend to material and information in the possession or control of members of his staff and of any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to his office."

The rule precludes discovery, however, of particular materials:

"This Rule does not require the State to disclose

1. [a]ny documents to the extent that they contain the opinions, theories, or conclusions or other work product of the State's Attorney, and

2. [t]he identity of a confidential informant so long as the failure to disclose the informant's identity does not infringe a constitutional right of the defendant, and the State's Attorney does not intend to call the informant as a witness, and

3. [a]ny other matter if the court finds that by disclosure there is a substantial risk of harm to any person which outweighs the interest in disclosure."

Md.Rule 741 c.[4]

---

**3.** This provision appears in Md.Rule 4–263(a), effective July 1, 1984, and is substantively unchanged. The new rules, however, include a separate provision for discovery in District Court proceedings. Md. Rule 4–262. This did not appear in the former rules.

**4.** This provision appears in Md.Rule 4–263(c), effective July 1, 1984.

 The following items were among the requests made by appellant in the case *sub judice:* [5]

1. "Furnish to the Defendant ... any material or information within [the State's] possession or control which would tend to reduce the Defendant's punishment for such offenses...."

2. "Furnish copies of all offense reports or other official police reports pertaining to these offenses."

3. "Describe precisely all surveillance ... of the [Defendant] ... which was conducted by any law enforcement officer or agency at any time during the investigation and arrest of the Defendant. For each such surveillance listed, give the date, name and address of the officer, exact location, equipment used (e.g. binoculars, cameras, videotape recorders, etc.), and complete results of the surveillance."

4. "State whether the Defendant has been the subject of any criminal investigation since August 1, 1982 relating to violations of the CDS laws of the State of Maryland."

5. "If your Answer to [No. 4] is in the affirmative, for each such investigation listed, give the following:

(a) the name and address of the person or agency conducting the investigation;

(b) the dates that the investigation was commenced and terminated;

(c) the precise purpose of the investigation;

(d) a complete and detailed account of all facts which the investigation revealed with regard to the Defendant;

---

**5.** Appellant submitted 75 requests, many of which included subdivisions. The State responded to approximately half of those requests. The court later compelled the State to answer six additional requests. We have renumbered the items in dispute here, as they were spread throughout appellant's pleading.

(e) the names, addresses and telephone numbers of each person who was arrested as a result of any such investigation."

6. "[P]ermit the Defendant, for each investigation listed in [the answer to No. 5], to inspect and photocopy all subpoenas, affidavits, applications for search warrants, search and seizure warrants, applications for electronic/telephonic surveillance, pen register logs and/or tapes, and any and all other documents relating to each such investigation."

The State answered as follows:

1. "None possessed or controlled."

3. "No electronic surveillance was conducted, as to the remaining portions of this question, the State refuses to answer."

Questions 2, 4, 5, and 6 were not specifically noted and answered, but were addressed in effect by a paragraph at the end of the Answer:

"The State refuses to answer the remaining questions in the defendant's Request for Discovery and Motion to Produce Documents owing to the fact that pursuant to Maryland Rule 741, it is not required to do so."

Questions 1, 2, 4, 5, and 6 involve the same problem—they each effectively request the State to open its investigative files to appellant for his inspection. Further, appellant offered no proof that these materials existed. Not only does the *Brady* doctrine not require such disclosure, *Agurs*, 427 U.S. at 106, 96 S.Ct. at 2398, but Md.Rule 741 c excludes these items from discovery.

The remaining request concerning surveillance presents a slightly different problem. The question preceding it asked the State to: "Provide the dates, times, and places of all surveillance, electronic or otherwise, of the Defendant, and give the reason for each such surveillance." The State answered that no electronic surveillance was carried out; hence, it follows that it would refuse to "describe" such activities pursuant to the next request.

The defense, however, knew at least one surveillance had taken place. Prior to the search on May 17, 1983, Yeagy was arrested. While Yeagy was being fingerprinted, Detective Kauffman told him that he had conducted a 90-day surveillance of Yeagy before April 20, and did not observe any drug sales or overhear any conversations concerning drugs.

Appellant did not and does not challenge the State's answer to the prior surveillance question, even though he knew that at least one surveillance had occurred. He cannot assert the discrepancy for the first time on appeal. Md.Rule 1085. In addition, the evidence of the surveillance by Detective Kauffman was presented by appellant himself when he testified at trial. The material was already known to him and, therefore, prevents invocation of the *Brady* doctrine. *Yuen v. State,* 43 Md.App. at 117, 403 A.2d 819. We conclude that the State's response did not violate *Brady, supra.*

## EXPERT TESTIMONY

At trial, a witness for the State, Officer Sheppard, testified concerning the packaging of drugs for sale, the equipment used to distribute drugs, and the quantities in which drugs are used and distributed. The defense objected to the officer's opinion evidence, because he did not qualify as an expert. Appellant makes the same argument on appeal.

In certain instances, a non-expert may give an opinion based on his special observations and expertise. *Scott v. Hampshire, Inc.,* 246 Md. 171, 177, 227 A.2d 751 (1967). Whether to allow such testimony lies within the sound discretion of the trial court. *See Gordon v. Contractors Transport Corporation,* 18 Md.App. 284, 289, 306 A.2d 573 (1973). Police officers often qualify as non-expert witnesses based on their professional knowledge and experience. *See, e.g., Brooks v. State,* 13 Md.App. 151, 158, 282 A.2d 516 (1971), *cert. denied,* 264 Md. 746 (1972) ("An experienced narcotics officer is qualified to express an opinion that

puncture scars on a subject's arms were made by hypodermic needles."); *Mullaney v. State,* 5 Md.App. 248, 261, 246 A.2d 291 (1968), *cert. denied,* 252 Md. 732 (1969) ("[A]n experienced police officer with a substantial background in the field of narcotics . . . was qualified to express an opinion that the smoke he smelled and observed emanated from the burning of marihuana."); *Silbert v. State,* 12 Md.App. 516, 541, 280 A.2d 55, *cert. denied,* 263 Md. 720 (1971) (police officer, experienced in lottery and gambling operations, possessed sufficient expertise to give opinions relating to alleged gambling paraphernalia and other matters.).

Prior to stating his opinion in this case, Officer Sheppard recounted his background and training concerning narcotics. His qualifications included: his assignment to the Narcotics Unit of the police department; participation in police training courses dealing with the identification, producing, sale and distribution of narcotics; attendance at numerous drug seminars; his acquisition of familiarity with the manner of packaging and equipment used by those who distribute controlled dangerous substances.

We conclude that a sufficient basis was established for Officer Sheppard to testify as a non-expert. *See Brooks, supra; Mullaney, supra.* There was no error.

## CONCLUSION

For the reasons stated above, the omission of evidence of appellant's activities after the sale on April 20, 1983, received appropriate consideration pursuant to *Franks, supra.* Also, the affidavit on its face supported the court's finding of probable cause for the search. Moreover, no error was made concerning discovery or the allowance of non-expert testimony at trial.

JUDGMENTS AFFIRMED.

COSTS TO BE BORNE BY APPELLANT.