## WOELFEL *v.* MAYOR AND ALDERMEN OF THE CITY OF ANNAPOLIS

[No. 157, October Term, 1955.]

*Decided, per curiam, February 10, 1956.*

*Opinion filed March 12, 1956.*

*Thomas J. Curley,* for appellant.

*H. Warren Buckler, Jr.,* and *John B. Wright,* with whom were *Niles, Barton, Yost & Dankmeyer,* on the brief, for appellee.

Brief on behalf of Mayor and Council of Easton as *amicus curiae* filed by *L. Clark Ewing,* Attorney for Mayor and Council of Easton.

Brief on behalf of the Commissioners of Thurmont as *amicus curiae* filed by *Thomas S. Glass* and *Weinberg & Glass,* Solicitors for the Commissioners of Thurmont.

BRUNE, C. J., delivered the opinion of the Court.

This case may be described as a sequel to *Hitchins v. City of Cumberland,* 208 Md. 134, 117 A. 2d 854. It originated as a special case stated filed pursuant to Code (1951), Article 16, Sections 238-239, in the Circuit Court for Anne Arundel County, in which George B. Woelfel is the complainant and the Mayor and Aldermen of the City of Annapolis (referred to below as the "City of Annapolis", or, more briefly, as the "City" or "Annapolis") is the respondent. The object of the suit was to obtain a determination: (1) of the validity of certain amendments to the Charter of Annapolis which the City undertook to adopt pursuant to the Municipal Home Rule Amendment, Article XI-E of the Constitution of Maryland, and an implementing statute enacted pursuant thereto, Chapter 423 of the Acts of 1955, codified as Sections 9-43, inclusive, of Article 23 A of the Code (1955 Supp.), and (2) of the validity of an ordinance adopted on the premise that these amendments were valid. The particular Sections involved are Nos. 11-18, which deal with charter amendments. All of the amendments challenged in this suit were initiated by the legislative body of the City in accordance with Section 13 of Article 23 A. No referendum was held on any of these amendments, and each of them became effective after due publication of notice in accordance with Section 13. A referendum vote could have been had under Section 13 on each amendment, on demand of twenty per cent or more of the qualified voters of the City, but no such demand was made. The Circuit Court entered a decree declaring each of the amendments and the challenged ordinance to be valid. The complainant appealed from that decree. Briefs were filed on behalf of the Mayor and Council of Easton and the Commissioners of Thurmont, as *amici curiae.* Each of them is a municipal corpora-

tion subject to the provisions of the Municipal Home Rule Amendment and each of them had a problem similar to that of the City of Annapolis. At the request of counsel for the complainant and for the City of Annapolis, we advanced the case for hearing and after full argument we affirmed the decree of the Circuit Court by a *per curiam* order.

All of the resolutions under attack were adopted by the City on May 17, 1955, which was approximately a month after the effective date of Chapter 423 of the Acts of 1955, which was enacted as an emergency measure. All but one were, in terms, charter amendments. The other resolution was also in fact a charter amendment, since it amended a special Act (Chapter 492 of the Acts of 1951) which had authorized the City to borrow up to $300,000 for certain parking projects, to issue bonds therefor and to levy *ad valorem* taxes to pay the principal and interest, and which had exempted bonds issued thereunder from referendum requirements and tax limitations contained in the Charter of Annapolis.

The *Hitchins Case* established the validity and effectiveness of Sections 11-18, inclusive, of Article 23 A as the means of amending the charters of municipalities subject to Article XI-E of the Constitution and within the definition of a "municipal corporation" contained in Section 9 of Article 23 A, in respect of matters falling within the scope of Section 3 of Article XI-E. That Section provides that:

"Any such municipal corporation, now existing or hereafter created, shall have the power and authority, (a) to amend or repeal an existing charter or local laws relating to the incorporation, organization, government, or affairs of said municipal corporation heretofore enacted by the General Assembly of Maryland, and (b) to adopt a new charter, and to amend or repeal any charter adopted under the provisions of this article."

The complainant contended that charter amendments of the types here under attack could not be made under Section 3 of Article XI-E of the Constitution and Section 13 of Article 23 A of the Code, but could be made only under Section 5 of Article XI-E by Act of the General Assembly approved on a referendum by a majority of the voters of the municipal corporation voting on the question.

The particular charter amendments here involved deal, in general, with: (1) increasing the borrowing limit of the City on short term loans; (2) restricting borrowing power previously granted by a special act to the extent that such power had not already been exercised; (3) increasing the limit on the rate of taxation; (4) increasing the authorized bonded indebtedness; and (5) eliminating mandatory requirements for referenda on bond issues and limitation on the entire amount of public debt. All of these are brought into the special case stated and a copy of each of them is filed as an exhibit; but any attack on the first is no more than a by-product of the attack on the last three, since a decision on their validity, which was specifically asked, would unavoidably have a bearing on the validity of the first. There is no serious attack, if any at all, on the second amendment. It is closely related in subject matter to the ordinance, since the amendment surrendered an unused power to borrow for parking projects and the ordinance authorizes a larger amount of borrowing for similar purposes.

The provisions of Section 5 of Article XI-E which are pertinent to the complainant's contentions are these:

"Notwithstanding any other provisions in this article, the General Assembly may enact, amend, or repeal local laws placing a maximum limit on the rate at which property taxes may be imposed by any such municipal corporation and regulating the maximum amount of debt which may be incurred by any municipal corporation. However, no such local law shall be-

come effective in regard to a municipal corporation until and unless it shall have been approved at a regular or special municipal election by a majority of the voters of that municipal corporation voting on the question."

The difference between this case and the *Hitchins Case* is simply this: here Section 5 is directly involved; there it was not.

The amendments here involved are valid under Section 3 and the *Hitchins Case,* unless Section 5 requires an opposite result. We hold that it does not.

The appellant's fundamental contention is that under Section 5 of Article XI-E, *exclusive* power to enact, amend or repeal limitations contained in a municipal charter upon the rate of taxation of property or upon the maximum amount of debt is reserved to the General Assembly and to a majority of the voters of the municipality. We do not think that this construction of Section 5 is supportable.

We think that the language of Section 3 is sufficiently broad to encompass the types of amendments referred to in the first two sentences of Section 5, and that the reservation of power contained in Section 5 is merely permissive. It says that the General Assembly *may* enact, not that *only* the General Assembly may enact. The purpose of the provision seems to be merely to enable the General Assembly and a majority of the voters of a particular municipality who vote on the question to apply a brake to excessive taxation or excessive borrowing, if need therefor should arise. This, we think, is the meaning of the language of the Section, and it is in harmony with the manifest general purpose of the Municipal Home Rule Amendment that municipalities shall govern themselves in local matters. In short, we see no reason for reading into the amendment a word which simply is not there, such as "only" or "exclusively".

The language of the concluding sentence of Section 5 confirms our view. It states that "All charter provi-

sions enacted under the authority of Section 3 of this Article shall be subject to any local laws enacted by the General Assembly and approved by the municipal voters under the provisions of this section." If Section 3 did not authorize the adoption, repeal or amendment of charter provisions dealing with limitations on the rate of taxation of property or the amount of municipal debt, or if the first two sentences of Section 5 barred action under Section 3, this concluding sentence of Section 5 would be utterly unnecessary.

If we had any doubt as to the correct construction of Section 5 and needed extrinsic aid to ascertain its meaning, an examination of the history of the Municipal Home Rule Amendment would furnish it and would confirm our view. As we said in the *Hitchins Case,* that amendment was proposed by the Commission on the Administrative Organization of the State, usually known as the Sobeloff Commission. The Commission's Second Report made in June, 1952, advocated such an amendment and incorporated a draft of one. The actual amendment as proposed by the General Assembly and as approved by the people does not differ in any respect here material from the form of amendment proposed by the Sobeloff Commission. At pages 29-30 of the Report referred to, in discussing the charter amending power to be conferred under Section 3 and the limitation thereon provided by Section 5, the Commission said:

"Specifically, it is proposed that the Constitution be amended to authorize all incorporated municipalities to change their charters or adopt new ones through local action. The General Assembly would be prohibited from enacting local laws relating to municipalities * * *. * * * As exceptions to the prohibitions in the proposed amendment, *the General Assembly, if it chose, could continue to enact local laws setting maximum tax and debt limits for municipalities, subject to local voter approval.* * * *

"The heart of the proposed amendment is contained in section 3." (Italics ours.)

The amendments under which the challenged ordinance were adopted were valid; and it is conceded that if they were valid, the ordinance, too, is valid.

For the reasons above stated we affirmed the decree of the Circuit Court by a *per curiam* order as above stated.