HITCHINS *v.* MAYOR AND CITY COUNCIL OF CUMBERLAND, ET AL.

[No. 116, September Term, 1957.]

318

Decided January 20, 1958.

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

William C. Walsh and William Walsh, with whom were Miles, Walsh & Stockbridge on the brief, for the appellant.

Thomas B. Finan for the appellees.

Henderson, J., delivered the opinion of the Court.

This friendly suit by a taxpayer was brought under the Uniform Declaratory Judgments Act, Code (1951), Art. 31A, to test the validity of a proposed bond issue of the City of Cumberland. On February 25, 1957, the Mayor and City Council of Cumberland passed Ordinance No. 2049, authorizing the City to issue and sell $500,000.00 of "Cumberland Urban Development Bonds of 1957". The parties agree that the Ordinance was passed in pursuance of the authority contained in Section 81(e) of the City Charter, as amended by Charter Amendment Resolution No. 4, effective September 28, 1955, and that this Charter Amendment was made in pursuance of the authority given to municipalities in Maryland, other than Baltimore City, by Article XIE of the Maryland Constitution, approved November 2, 1954, and by the implementing legislation enacted by Chapter 423, Acts of 1955, adding sections 9 to 43 to Article 23A of the Code

(1957 Supp.). Chapter 423 applies to Cumberland. *Hitchins v. City of Cumberland,* 208 Md. 134, 143.

Sections 31 to 39, inclusive, of Art. 23A, relate to the creation of Municipal Public Debt. Sec. 31 provides that every municipal corporation shall have the power "under this subheading to borrow money for any proper public purpose and to evidence such borrowing by the issue and sale of its general obligation bonds in the manner herein prescribed, unless the charter of said municipal corporation shall provide a different procedure for the borrowing of money or shall be amended so to provide in the manner set forth in this subtitle. Charter amendments for such purpose are hereby authorized. * * * Whenever there shall be any conflict between the provisions of this subheading and the charter of any municipal corporation, the provisions of said charter shall control." Sec. 32 provides that all bonds of a municipal corporation shall be authorized by resolution or ordinance, and states in some detail what such ordinance shall contain. The last paragraph of sec. 32 contains a sentence that "it shall not be necessary to submit any such resolution or ordinance or the question of the issuance of bonds authorized thereby to a referendum of the qualified voters of said municipal corporation unless said resolution or ordinance shall so provide or unless the charter of such municipal corporation shall so require."

Sec. 34, under the subheading "Limitations on authority of municipal corporations" provides in subsection (3): "If the charter of any municipal corporation shall require a referendum on the issue of all or any particular type of bonds of such municipal corporation, such bonds shall be issued only if a majority of the qualified voters voting on the referendum held on such issuance shall favor the same but if the majority of said qualified voters shall vote against such issuance then another referendum shall not be held on the question of issuing bonds for the same public purpose until the expiration of one year from the date upon which the issuance of said bonds shall have been so disapproved".

It is agreed that prior to the charter amendment of September 28, 1955, any proposed bond issue, unless authorized

by specific legislation, had to be approved by two-thirds of the voters at a general or special election. Section 81(e), as amended provides that the Mayor and City Council shall have the power "to borrow, from time to time, such sums of money as they may deem necessary for the general welfare of the city and its general corporate purposes", after passing and publishing an ordinance authorizing such loan, "and provided further that such loans shall be obtained and bonds issued evidencing said loan, any time after fifty (50) days, but not longer than four (4) years from the date of the passage of said Ordinance, unless on or before the fortieth (40) day after being so ordained or passed there shall be presented to the legislative body of the municipal corporation * * * a Petition signed by 20% or more of the persons who are qualified to vote in municipal general elections in the City of Cumberland * * *. If the Petition for a referendum complies with the requirements of this section, the legislative body shall, by Resolution * * * within thirty days * * * specify the day and hours for the election * * * at either the next regular municipal general election or at a special election, in the discretion of the legislative body. In the event a special election is designated, it shall be held within a period of not less than forty (40) days nor more than sixty (60) days after the final passage of the Resolution providing for the referendum. * * * If a majority of the voters approve said loan and the issuance of said bonds at any referendum held thereon in pursuance of the provisions of this subsection, said loan may be made and said bonds may be issued." The parties agree that the change in the charter with reference to the initiation of a referendum, and the required vote thereon is valid under the provisions of the enabling act and not inconsistent with anything therein contained. We agree. Cf. *Hitchins v. City of Cumberland, supra,* and *Woelfel v. Mayor and Aldermen,* 209 Md. 314.

Section 1 of Ordinance No. 2049 provided that "said Mayor and City Council shall issue and sell, at any time after fifty (50) days from the passage of this Ordinance but not later than four (4) years from the date of its passage, its negotiable coupon serial bonds * * * ." Section 2 of the

Ordinance provided for the form of the bonds and coupons, to be dated May 15, 1957, with interest payable on November 15 and May 15 of each year.

Section 3 of the Ordinance provided that "in the event no referendum is requested by the requisite number of petitioners within forty (40) days from the date of the passage of this Ordinance, * * * the said Commissioner of Finance and Revenue shall cause advertisement to be made and inserted in two daily newspapers printed and circulated in the City of Cumberland, not less than ten (10) days prior to the date of the sale thereof, and such further advertisement as he may deem proper, giving notice that he will offer said bonds for sale on the 21st day of May, 1957, at 10:00 o'clock A. M., E. D. S. T. The advertisement to be published as provided in this Section shall be in substantially the following form and the terms and conditions therein set forth shall be the terms and conditions governing such sale: * * * ."

There was opposition to the bond issue, and petitions were circulated and filed on or before April 6, 1957. On May 6, 1957, the Mayor and City Council decided that the petitions did not contain the valid signatures of 20% of the qualified voters, and that no referendum should be held. However, a suit was threatened, and the City made no effort to sell the bonds on May 21, 1957. On May 27, 1957, the City passed an amendatory Ordinance No. 2057, adding a new Section 3A to the original Ordinance, purporting to give to the Mayor and City Council authority to fix, by a subsequent ordinance, a definite date for the sale of said bonds, provided they were sold within the four year period established by Section 1 of the original Ordinance. The new Ordinance also provided for advertisement of the bonds by the Commissioner of Finance and Revenue, and further provided that if any referendum should be held on the original Ordinance No. 2049, it should be considered as having been held on that Ordinance as amended by Ordinance No. 2057, and that no further referendum should be held on Ordinance No. 2057, or on Ordinance No. 2049 as amended by Ordinance No. 2057. On May 30, 1957, suit to compel a referendum on Ordinance No. 2049 was filed, but had not

been decided when this suit was heard in the trial court. We were informed at the argument that the petition for a referendum has since been held valid.

The bill of complaint in the instant case, filed on June 4, 1957, recited the foregoing facts and alleged that the Mayor and City Council did not have the authority to amend the original Ordinance, or to prohibit a further referendum on the new Ordinance, or to refer the new Ordinance to a vote along with the original one. A restraining order was passed, by consent, to delay the referendum and the issuance of any bonds pending the decision in the instant case. A hearing was held on bill and answer. The Chancellor decreed (1) that Ordinance No. 2049 was valid, and (2) "That the insertion therein of the conditional date for the sale of such bond on May 21, 1957, was immaterial, and that the bonds may be sold prior to February 25, 1961, on a date to be determined by the Mayor and City Council of Cumberland, provided no referendum shall have been called for, or, if a referendum be necessary, that the issuance of such bonds be approved thereby." The appeal is from that decree.

The appellant contends that Ordinance No. 2049, standing alone, is invalid on the ground that it contained no provision fixing a definite date of sale, other than the date specified in the event that no referendum petition was filed within the period specified in the Charter. He argues that the enabling act requires that a definite date of sale be fixed in the Ordinance in every case. Neither party raises or discusses the question whether Section 81(e) of the City Charter, as amended, obviated the need for fixing a definite date of sale in the original Ordinance, as a procedural matter under Code (1957 Supp.), Art. 23A, sec. 31. Cf. *Woelfel v. Mayor and Aldermen, supra.* The Charter provision seems to deal rather specifically with the problem, and limits the time within which the Mayor and City Council shall fix the date of a special election, after a valid petition is filed, and the time within which the bonds shall be subsequently issued. It was stated at the argument that general municipal elections are held every four years. Even if we could consider this point under Rule 885 of the Maryland Rules, we shall assume,

without deciding, that the provisions of the enabling act control.

Code (1957 Supp.), Art. 23A, sec. 32, provides, in part, that "All bonds of a municipal corporation shall be authorized by resolution or ordinance of the legislative body of said municipal corporation which shall contain the following: * * * (3) The form of the notice soliciting bids for the purchase of said bonds which shall set forth the date, place and time for receiving and opening bids and a brief description of the purpose or purposes for which said bonds are to be issued, * * * ." The appellant also points out that sec. 34 (4) of the same article provides that "No bonds shall be sold by a municipal corporation except by the solicitation of competitive bids at public sale after the publication * * * of the notice of sale in the form prescribed by such resolution or ordinance * * * over a period of not less than ten days next preceding the date fixed for such sale."

The appellant contends that the fixing of a definite date is mandatory, as indicated by the use of the word "shall". But it is well settled that the use of the words "shall" or "may" are not controlling, in determining whether a particular provision is mandatory or directory. Cf. *Fleishman v. Kremer,* 179 Md. 536, 540, and *Metcalf v. Cook,* 168 Md. 475, 477. See also *Chickaming v. Carpenter,* 106 U. S. 663, 667, dealing with an issue of bonds after a referendum. It was there held that a provision that the bonds shall be sold within sixty days, did not invalidate a later issue. The question of construction turns upon the intention of the Legislature as gathered from the nature of the subject matter and the purposes to be accomplished. Cf. *Bond v. Baltimore,* 118 Md. 159. In the instant case, it is clear that a date of sale must be fixed as a necessary preliminary to the competitive bidding, which sec. 34 plainly requires. But it does not follow that the date must be fixed in advance of a referendum the result of which is still uncertain. Indeed, until the date for the vote on the question is set, it would be impractical to set the date upon which the bonds are offered.

In 15 *McQuillin, Municipal Corporations* (3rd Ed.), §

43.49, it is said: "Bonds approved by the electorate need not be issued at any one time or in one instalment. In the absence of a provision requiring them to be issued at a particular time, a municipality may issue voted bonds as needed within a reasonable time, and it is established that a reasonable delay in issuing bonds voted at an election does not bar their issuance when need arises. No rule can be laid down as to within what time bonds must be issued after they have been voted for or their issuance directed by the council, it being generally held that the matter rests in the sound discretion of the municipal authorities. Although bonds may be vitiated by unreasonable delay in their issuance, they have been held, in particular circumstances, not to have been rendered invalid by a delay between the time of their authorization and issuance". See *McNichols v. City and County of Denver*, 74 P. 2d 99 (Colo.) (2 years); *Quaid v. City of Detroit*, 29 N. W. 2d 687 (Mich.) (19 years); *Missouri Electric Power Co. v. Smith*, 155 S. W. 2d 113 (Mo.) (8 years); *Nall v. City of Elizabethtown*, 254 S. W. 893 (Ky.) (4 years). See also 43 *Am. Jur.*, "Public Securities and Obligations", § 121, and cases collected in the Note, 135 A. L. R. 768.

In the instant case there is no question as to the reasonableness of the delay under the circumstances, and we think the language of sec. 32 (3), as to the form of notice soliciting bids, cannot fairly be said to' require the fixing in advance of a definite date for receiving bids in the event that a referendum is held. The word "form" does not connote a complete or executed document. Moreover, we think the section itself reposes a large measure of discretion in the municipal authorities, for in the concluding sentence of sec. 32 it is provided that "Each such resolution or ordinance may contain such other provisions, not inconsistent with this subheading, as the legislative body of such municipal corporation may deem appropriate, and may expressly permit the executive of such municipal corporation to make such modifications in the forms adopted by such resolution or ordinance as will not alter the substance of such forms." The only forms mentioned in the section are the form of the bonds

and the form of the notice soliciting bids. Modification of the form of notice would seem to include modification of the date for receiving bids. If the original Ordinance had delegated such power to the Mayor, we think its exercise by him would not have been an alteration of substance. We perceive no reason why the legislative body itself cannot by a subsequent ordinance make a similar modification. Indeed, sec. 34 (3) contemplates the issuance of bonds after a favorable referendum at a date that could not be determined until after the election, and even the possibility of a second referendum on the same question after the lapse of a year. We agree with the Chancellor that the language of the section is directory and not mandatory.

The appellant further contends, however, that the City had no power to alter or modify the original Ordinance after the filing of a referendum against it. It has been held that changes which might have the effect of defeating the purpose of a referendum are invalid, and it is so provided in some constitutions and statutes. The cases are collected in a Note 33 A. L. R. 2d 1118, 1130. Still, it is the general rule that a city may amend an ordinance pending 'a referendum under some circumstances, as where the action is in good faith and taken to avoid objections to the original ordinance. Cf. *Ginsberg v. Kentucky Utilities Co.,* 83 S. W. 2d 497 (Ky.); *Hall v. City and County of Denver,* 177 P. 2d 234 (Colo.); and *Utah Power & Light v. Ogden,* 79 P. 2d 61 (Utah). In the instant case we think it would be carrying technical objection to an unwarranted extreme, to hold that the amendatory Ordinance was invalid. Perhaps it was unnecessary, in the sense that it did not fix any definite date and contemplates the passage of another ordinance to do so. Nevertheless, it clarifies the procedure, and we see no good reason why the protestants should be put to the expense of a new petition in order to obtain a referendum on the desirability of the bond issue. If the vote is in favor of the bond issue, we now hold that the bonds to be issued under the provisions of the Ordinance, as amended, will not be subject to attack on the ground that the date for receiving bids in the event of a referendum was not fixed therein. Of

326

course, the time limitations set up in Section 81(e) of the City Charter must be strictly observed.

> *Decree affirmed in part, reversed in part, and case remanded for the passage of a decree in accordance with the views expressed in this opinion, costs to be paid by the Mayor and City Council of Cumberland.*