653 A.2d 496

Edeltraut WYATT

v.

Duane JOHNSON.

No. 663, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Feb. 7, 1995.

Edward V. Hanlon, Greenbelt, for appellant.

William H. Klumpp, Jr., Towson, for appellee.

Argued before FISCHER, DAVIS and HARRELL, JJ.

DAVIS, Judge.

This is an appeal from a judgment of the Circuit Court for Baltimore City. Appellant, Edeltraut Wyatt, brought suit against Duane Johnson for personal injury and lost wages arising from an automobile accident. The circuit court granted Wyatt's motion for judgment on the issue of liability, and a jury awarded her $7000 in damages. The court subsequently denied Wyatt's motion for a new trial.

Appellant presents five questions for our review, which we rephrase for the sake of clarity:

1. Did the circuit court err in refusing to use an itemized verdict sheet as required by MD.CODE ANN., COURTS & JUDICIAL PROCEEDINGS § 11–109?

2. Did the circuit court err in refusing to restate the collateral source instruction in response to a written question from the jury?

3. Did the circuit court err when it struck for cause two jurors who had been evaluated or treated for carpal tunnel syndrome?

4. After the appellant inadvertently mentioned the name of an insurance carrier, did the circuit court err when it informed the jury that appellant had mentioned her own insurance company?

5. Did the circuit court err in excluding an out-of-court statement made by appellant at the time of the accident?

## FACTS

On the afternoon of November 29, 1989, Edeltraut Wyatt left her home to go bowling. Wyatt bowled regularly in a five o'clock league, and her usual route to the bowling alley took her through Jessup, Maryland, on Route 175. As she approached the intersection with Brock Bridge Road, a vehicle driven by Duane Johnson entered the boulevard and struck the side of her vehicle. The impact of the collision forced Wyatt's head into the windshield. Wyatt testified, "I felt very sick and my head was hurting bad.... I felt like vomiting." Neither party called the police. After the accident, Wyatt proceeded to the bowling alley but was too ill to bowl.

The only witnesses at trial were Wyatt and Johnson. At the close of Wyatt's case, the court granted her motion for judgment on the issue of liability under the Boulevard Rule. The sole issue for the jury was the extent of the damages proximately caused by Johnson's negligence. With regard to that issue, the parties stipulated to a series of medical records prepared by doctors who had examined or treated Wyatt.

Wyatt asserted that she suffered personal injury as a result of the accident, including a concussion, neck pain, back pain, and carpal tunnel syndrome. Diagnosis and treatment of those conditions included a bone scan test, a CAT scan, an EMG, nerve conduction studies, five months of physical therapy, a collar brace, a back brace, and a wrist splint. Her medical bills totalled $9,200. Wyatt's claim also included $3,900 in lost wages for the period from late November 1989 to early February 1990, as well as unspecified damages for pain and suffering.

Johnson asserted that Wyatt was not seriously injured during the accident, and that the medical expenses incurred were the result of pre-existing conditions. In support of that theory, he presented evidence that Wyatt had been treated for headaches, shoulder problems, and neck pains prior to the accident. According to one physician, Wyatt suffered from "degenerative cervical disk disease, a pre-existing condition which is largely responsible for her discomfort." Johnson also asserted that the physical therapy was unnecessary, and that the carpal tunnel syndrome developed in January 1990 after Wyatt fell and landed on her hands.

As we noted earlier, Wyatt's claim for damages included $3,900 in lost wages. The exhibits admitted at trial included a "Wage and Salary Verification" form completed by Wyatt's employer. The form states, in part, that Wyatt "has applied for benefits under the MARYLAND ECONOMIC LOSS PROTECTION LAW as a result of injuries in an automobile accident." The employer is requested to state the dates that the employee was absent following the accident. Question five asks: "WAS EMPLOYEE PAID WAGES OR SALARY DURING THIS ABSENCE?" The nurse who completed the form checked "yes" to indicate that Wyatt had been paid, and wrote "$3,900" in the space provided for "amount paid." Beneath the amount, someone wrote: "has to be paid to replacement."

In the midst of their deliberations, the jurors sent the following written question to the court:

On the wage and salary verification, a statement is written in after answering "yes" to number five. We do not understand what this means. Was she paid? Did she have to give her wages to the replacement? Who wrote that in?

Over Wyatt's objections, the court instructed the jury that they must decide the issue on the evidence presented:

... I'll answer this question as best I can, which is, first, I cannot now go beyond this piece of paper and the evidence to give you information.

In other words, to the extent that your question can be answered, the answer must come from the testimony that's already in the case; and if it cannot be answered with that testimony or any reasonable inferences made from it, then your question, to that extent, cannot be answered.

And you are not to base your verdict on guesses or conjecture. You are to base your verdict on the instructions which I have given you, plus the evidence in the case, and nothing more.

Wyatt requested, *inter alia*, that the court reinstruct the jury on the collateral source rule, but the judge declined to do so.

Prior to trial, the parties had entered into a "high-low" agreement. The agreement stipulated that Wyatt would receive at least $7,500 but no more than $50,000, regardless of the jury's verdict. The jury awarded Wyatt $7,000 in damages. After her motion for a new trial was denied, Wyatt noted this appeal.

## LEGAL ANALYSIS

### I

■ During trial, the trial judge asked both parties to prepare a suggested verdict sheet for submission to the jury. The sheet prepared by Wyatt complied with § 11–109 of the Court and Judicial Proceedings Article (CJP), which states in pertinent part:

As part of the verdict in *any action* for damages for personal injury in which the cause of action arises on or

after July 1, 1986 or for wrongful death in which the cause of action arises on or after October 1, 1994, the trier of fact *shall itemize* the award to reflect the monetary amount intended for:

(1) Past medical expenses;

(2) Future medical expenses;

(3) Past loss of earnings;

(4) Future loss of earnings;

(5) Noneconomic damages; and

(6) Other damages.

MD.CODE ANN., COURTS & JUD. PROC., § 11–109(b) (1994 Supp.) (emphasis added). After hearing argument from both sides, the trial judge elected to give the jury the verdict sheet submitted by Johnson, which asked for a single figure:

What, if any, damages do you award to the plaintiff?

The court rejected Wyatt's verdict sheet after noting that the cap on noneconomic damages, contained in CJP § 11–108, did not apply here due to the high-low agreement. The court explained:

That being so, the economic cap will not apply in this case. That being so, there is no reason for the jury to have to divide its verdict ... into these various components.

And without the cap—I don't know if counsel realizes it or not, but without the cap, it has been the practice of this bench—this circuit court, as far as I know, and other courts as well—just to have a one line damage verdict....

The court also noted that Wyatt had not submitted evidence of future medical expenses or future loss of earnings.

As we emphasized above, CJP § 11–109(b) clearly states that the verdict "shall" be itemized in "any action" for personal injury damages. Wyatt contends that § 11–109(b) is mandatory rather than directory, and that the trial court committed reversible error by failing to use an itemized verdict sheet.

In ordinary usage, the term "shall" is a word of command, meaning "must," and is inconsistent with the exer-

cise of discretion. BLACK'S LAW DICTIONARY 1375 (6th ed.1990). As a general rule, we presume that the legislature used the term in its usual and natural meaning unless there is something in the legislation to indicate otherwise. *Maryland Medical Service v. Carver,* 238 Md. 466, 479, 209 A.2d 582 (1965). It is well settled, however, that the use of the term "shall" will sometimes be construed as merely permissive or directory. *Hitchins v. Mayor of Cumberland,* 215 Md. 315, 323, 138 A.2d 359 (1958); *Resetar v. State Bd. of Education,* 284 Md. 537, 547–49, 399 A.2d 225, *cert. denied,* 444 U.S. 838, 100 S.Ct. 74, 62 L.Ed.2d 49 (1979). The question of construction turns upon the intent of the legislature. As Chief Judge McSherry observed in *Upshur v. Baltimore City,* 94 Md. 743, 51 A. 953 (1902):

> [M]ere words do not control. The whole surroundings, the purposes of the enactment, the ends to be accomplished, the consequences that may result from one meaning rather than from another, and the cardinal rule that seemingly incongruous provisions shall be made to harmonize rather than conflict ... must all be considered in determining whether particular words shall have a mandatory or directory effect ascribed to them.

*Id.* at 757, 51 A. 953 (citation omitted). *See also Resetar,* 284 Md. at 547–49, 399 A.2d 225.

■ The Court of Appeals has variously said that "shall" will not be construed as mandatory in cases where that construction would produce an impractical result, *Hitchins,* 215 Md. at 323, 138 A.2d 359, or would otherwise defeat the broader goals embodied in a particular law. *See Maryland State Bar Ass'n v. Frank,* 272 Md. 528, 533, 325 A.2d 718 (1974); *State v. Musgrove,* 241 Md. 521, 532, 217 A.2d 247 (1966). Moreover, whether a statute is considered mandatory or directory must be ascertained from the provisions of the statute itself, and a construction that is internally inconsistent must be avoided. *Blumenthal v. Clerk of the Circuit Court,* 278 Md. 398, 408–09, 365 A.2d 279 (1976). *See also Maryland Medical Service,* 238 Md. at 480–82, 209 A.2d 582.

In the case *sub judice,* the pertinent statute states that the trier of fact "shall itemize the award" as part of the verdict in "any action" for damages resulting from personal injury. CJP § 11–109(b). Johnson contends that the sole purpose to be served by the itemization of awards is to insure that noneconomic damages do not exceed the cap. The statute itself suggests otherwise. In cases where the award includes future economic damages, for example, the court or the health claims arbitration panel may order that those damages be paid "in the form of annuities or other appropriate financial instruments," or in periodic payments "consistent with the needs of the plaintiff." CJP § 11–109(c)(1).

In reviewing the legislative history, we note a broader purpose behind the enactment of the cap on noneconomic damages. The relevant documents include the REPORT OF THE GOVERNOR'S TASK FORCE TO STUDY LIABILITY INSURANCE (Dec. 1985) (the Task Force Report). *See Murphy v. Edmonds,* 325 Md. 342, 368–70, 601 A.2d 102 (1992); *United States v. Streidel,* 329 Md. 533, 546–50, 620 A.2d 905 (1993) (discussing the legislative history of the cap). The Task Force Report explains that the cap was intended to help insurance carriers set more accurate rates:

> *Greater predictability of the amount and basis of awards is necessary.* Economic damages for lost wages, medical expenses and other monetary losses, have finite limits and may be anticipated and calculated *with some degree of certainty,* whereas noneconomic damages such as pain, suffering, or dissettlement are virtually impossible to predict.

REPORT OF THE GOVERNOR'S TASK FORCE TO STUDY LIABILITY INSURANCE, at 11 (emphasis added). Even in cases where the cap is not an issue, presenting the defendant with an itemized "bill" for damages will provide the insurance industry with data which may be useful in underwriting. An itemized verdict sheet may also have the effect of forcing the fact finder to think more carefully about each component of damages.

As the Court explained in *Barnes v. State, ex rel. Pinkney,* 236 Md. 564, 574, 204 A.2d 787 (1964), the word "shall"

demonstrates a mandatory intent "unless the context indicates otherwise." There is nothing in the legislative history or the statute itself to suggest that use of an itemized verdict sheet was intended to be merely directory. In this context, the ordinary meaning of the term "shall" is consistent with the broader purposes of the cap statute, and is neither unreasonable nor impractical. Accordingly, we hold that an itemized verdict sheet is required in all cases involving damages resulting from personal injury, regardless of the amount or categories of damages at issue.

■■ Against the possibility that we might so hold, Johnson argues that the error was not prejudicial in this particular case. In civil cases, an appellate court rarely will reverse for error below unless the error "was both manifestly wrong and substantially injurious," and had a prejudicial effect on the outcome of the case. *St. Luke Evangelical Lutheran Church, Inc. v. Smith,* 318 Md. 337, 344, 568 A.2d 35 (1990) (quoting *Beahm v. Shortall,* 279 Md. 321, 331, 368 A.2d 1005 (1977)). *See also Harris v. Harris,* 310 Md. 310, 319, 529 A.2d 356 (1987). Under certain circumstances, however, prejudice may be presumed. *See Safeway Stores v. Watson,* 317 Md. 178, 183–84, 562 A.2d 1242 (1989) (court wrongfully excluded a party or its representative); *Harris,* 310 Md. at 319–20, 529 A.2d 356 (court wrongfully disqualified a litigant's chosen counsel prior to trial); *King v. State Roads Comm'n,* 284 Md. 368, 372, 396 A.2d 267 (1979) (significant procedural irregularity impaired or denied appellant's full exercise of the peremptory challenge privilege). In the case at hand, we conclude that prejudice must be presumed.

At trial, counsel for Wyatt explained his objection to a one-line verdict:

I believe it is clear and I believe the defendant believes that a simple one line "fill in the blank" for damages, if any, favors the defendant because it does not cause the jury to think through its award by component in arriving at a just

award taking into account all the factors the Court asked the jury to take into account.[1]

In light of the legislative history, we conclude that the use of an itemized verdict sheet was intended, in part, to ensure that personal injury awards are consistent with both the law and the evidence. We agree that asking the fact finder to "think through" the amount of any award, component by component, will help the jury arrive at a just and accurate award.

We do not agree, however, that the failure to render an itemized verdict will necessarily favor the defendant. Rather, we think that either party may be prejudiced, depending on the facts of a particular case. In her third assignment of error, Wyatt argues that the jury improperly considered collateral sources when considering the amount of Wyatt's lost wages. Our consideration of that issue is seriously impaired by the lack of an itemized verdict. Had an itemized verdict sheet been used in this case, we would know how much the jury awarded for lost wages, and we would be in a better position to assess the jury's verdict as to this issue.

A comparison with our decision in *Larche v. Car Wholesalers, Inc.,* 80 Md.App. 322, 562 A.2d 1305 (1989) is instructive. In *Larche,* appellant brought suit against a licensed car dealer, alleging that a car he purchased had been falsely represented as a new car which had been driven 6,325 miles as a "demonstrator," when in fact it was a used car acquired from another dealer. *Id.* at 324, 562 A.2d 1305. Appellant's claim went to the jury under six different theories, including causes of action for fraud, breach of warranty, breach of contract, unfair and deceptive trade practice, negligent misrepresentation, and violation of the Magnuson–Moss Warranty Federal Trade Commission Improvement Act. *Id.* at 325, 562 A.2d 1305. The jury returned a general verdict in favor of appellant. Under

---

1. During oral argument, we asked counsel for Johnson why he requested a one-line verdict, despite the clear mandate of CJP § 11–109(b). He replied, in essence, that the standard practice in Baltimore City is to keep things as "simple" as possible for the jury. We think the use of an itemized verdict sheet makes it easier for the jury to render a verdict that is consistent with the law and the evidence.

the Magnuson–Moss Act claim, the judge had discretion to make an award of attorneys' fees. *Id.* at 326, 562 A.2d 1305. Attorneys' fees could not be awarded, however, under any of the remaining theories. Because the jury had rendered a general verdict, it was impossible to determine whether an award of attorneys' fees was proper. We concluded:

> Appellant would be entitled to an award of attorneys' fees only if he prevailed under the Magnuson–Moss Act. But the general verdict in favor of appellant could have been on any one of six theories. In the present posture of the case, no award of attorneys' fees can be made even though appellant may be entitled to have the court consider making such an award. The only remedy that suggests itself is a remand for a retrial on the seventh count.[2]

*Id.* at 329, 562 A.2d 1305. *See also Reuter v. Reuter,* 102 Md.App. 212, 235–36, 649 A.2d 24 (1994) (remand was required where the trial court's failure to use a child support worksheet made it impossible to determine how the court calculated the amount of the child support award). We think that a similar result is required in the case before us. The use of an itemized verdict sheet was intended, in part, to help ensure that the fact finder's verdict is consistent with the law and the evidence. Although it would not be strictly "impossible" for us to address the collateral source issue here, our review of the issue has been substantially impaired by the lack of an itemized verdict sheet.

In summary, we hold that the use of an itemized verdict sheet is required in any action for personal injury or wrongful death, regardless of the amount or type of damages at issue.[3] Where an itemized verdict sheet has not been prepared, prejudice will be presumed in any case in which the absence of

---

**2.** We did not remand on all counts because we wished to preserve the $8,500 verdict for compensatory damages in appellant's favor. *Larche,* 80 Md.App. at 332, 562 A.2d 1305.

**3.** Our ruling, of course, does not apply to a cause of action which arose before the dates set forth in CJP § 11–109(b) (July 1, 1986 for personal injury, and October 1, 1994 for wrongful death).

an itemized verdict sheet impairs our ability to decide other issues raised on appeal. Because our ability to decide one of the issues raised here has been impaired, the judgment is reversed and the case remanded for a new trial as to damages.

■ Finally, in his brief, Johnson asserts that mandatory itemization does not make sense for those categories of damages that are unsupported by competent evidence. We agree. In the case *sub judice*, for example, Wyatt did not offer evidence of future medical expenses or future lost wages. When an itemized verdict sheet is prepared in accord with CJP § 11–109, the trial judge may "zero out" or delete those damage categories that are not at issue in a particular case. [*See Privette v. State*, 320 Md. 738, 748, 580 A.2d 188 (1990) (holding that a trial judge is obliged to give a correct jury instruction, notwithstanding that "request for instruction was technically erroneous," if the evidence generates the subject matter of the jury instruction.) ]

## II

In view of our holding on the first issue, *supra*, appellant's objections to the jury selection process are moot for our present purposes. Nonetheless, we think there is a fair possibility that the issue will arise again in any new trial. We shall address the issue here for the benefit of the court and the parties.

■ During *voir dire*, two prospective jurors stated that they had been evaluated or treated for carpal tunnel syndrome. They also stated that there was nothing about the experience that would prevent them from rendering a fair and impartial verdict. Over Wyatt's objection, the trial court struck both jurors for cause. The judge observed:

> As you know, counsel, there is a great debate about how it's caused, the etiology of carpal tunnel syndrome. There's been great variations in the treatment and the results of treatment....

In striking the jurors, the court noted that with a condition like carpal tunnel syndrome, a person's "personal experience would tend to dominate" over the evidence presented at trial.

 Wyatt contends that "there is no basis in law" for the court to strike these two jurors. As a general rule, a juror may be struck for cause only where he or she displays a predisposition for or against a party "because of some bias extrinsic to the evidence to be presented." *Miles v. State,* 88 Md.App. 360, 375, 594 A.2d 1208, *cert. denied,* 325 Md. 94, 599 A.2d 447 (1991) (quoting *McCree v. State,* 33 Md.App. 82, 98, 363 A.2d 647 (1976)). In evaluating a juror's potential bias, the court must assess whether the juror could give fair and impartial consideration to the evidence and reach a just conclusion. *King v. State,* 287 Md. 530, 535, 414 A.2d 909 (1980). The court's decision to strike a juror for cause will not constitute a ground for reversal absent an abuse of discretion.

There are two situations in which a trial court's exercise of discretion may constitute reversible error. First, a party may allege that the trial judge failed to make an adequate inquiry into the likelihood of bias before electing to strike the juror. *King v. State,* 287 Md. at 537, 414 A.2d 909; *Stokes v. State,* 72 Md.App. 673, 677, 532 A.2d 189 (1987). Second, a party may allege that there was no reasonable basis from which the court could conclude that the juror was incapable of giving fair consideration to the evidence. *See Stokes,* 72 Md.App. at 677–78, 532 A.2d 189 (holding that the mere exchange of smiles between the juror and appellant, without more, did not amount to a showing of bias).

 In civil cases, an appellate court will not reverse for error below unless the error had a prejudicial effect on the outcome of the case. *St. Luke Evangelical Lutheran Church,* 318 Md. at 344, 568 A.2d 35. Under certain circumstances, prejudice may be presumed. In *King v. State Roads Comm'n,* 284 Md. 368, 371–72, 396 A.2d 267 (1979), the Court of Appeals noted that "a significant deviation from the prescribed procedure" that impairs or denies a litigant's peremptory challenge

privilege would ordinarily require reversal "without the necessity of showing prejudice." [4]

Applying these principles to the case *sub judice*, we conclude that the trial court did not err in striking the two jurors who had been "examined or treated" for carpal tunnel syndrome. In light of the controversy surrounding the causes and treatment of carpal tunnel syndrome, the trial court could reasonably conclude that a prospective juror who had been examined *or* treated for that condition was likely to be biased in favor of or against Wyatt.[5] Although both jurors stated that their own experiences would not influence their ability to render a fair and impartial verdict, the trial court was not required to accept those assertions as true.

Wyatt contends that she was prejudiced because the court's decision to strike the prospective jurors, "in effect, gave the defense six peremptory challenges rather than the four stipulated by the Maryland Rules." We find no merit in that argument. Unlike the circumstances in *King v. Comm'n*, 284 Md. at 372, 396 A.2d 267, we observe no significant deviation from the proper procedures. Moreover, we think it inaccurate to say that Wyatt was prejudiced by the court's conduct of *voir dire*. Juror number 239 stated that she was a phone receptionist at Church Home Hospital, where Dr. Halikman, one of the defense experts, has admitting privileges. Although Juror 239 stated that she could render a "fair and impartial verdict," the trial court struck her for cause at Wyatt's request.

---

**4.** In *King v. Comm'n*, 284 Md. at 369–70, 396 A.2d 267, both the plaintiff and defendant exercised their four peremptory challenges, yet 17 veniremen remained. To obtain a panel of 12, the trial judge struck five additional jurors. As the Court explained, the trial court's decision improperly gave the judge "more to say about who would not sit on the panel than either of the parties." *Id.* at 372, 396 A.2d 267.

**5.** We think it likely that a person would not be evaluated for carpal tunnel syndrome unless he or she had experienced significant pain in one or both wrists.

 As the Court of Appeals explained in *Bluthenthal & Bickart v. May Advertising Co.*, 127 Md. 277, 96 A. 434 (1915):

It does not appear that the defendant was injured by the action complained of, or that the jury which actually tried the case was not composed of competent and qualified jurors. The authorities support the proposition that it is not reversible error for the Court of its own motion to exclude a juror, *even for insufficient cause*, if an unobjectionable jury is afterwards obtained.

*Id.* at 285, 96 A. 434 (emphasis added). *But see King v. State*, 287 Md. at 538–39, 414 A.2d 909 (noting that the holding in *Bluthenthal* sometimes will not apply in criminal proceedings).[6] As long as the jury selection process results in a fair and impartial panel, the method and manner of conducting *voir dire* rests within the sound discretion of the trial court. *Colvin v. State*, 299 Md. 88, 102, 472 A.2d 953, *cert. denied*, 469 U.S. 873, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984). We conclude that the trial court did not err by excluding the jurors at issue.

### III

Wyatt next contends that the trial court erred in refusing to restate its jury instruction on the collateral source rule in response to a question from the jury. We think it unlikely that the issue will surface again on remand. In light of our ruling in part I, *supra*, we decline to address the issue.

### IV

During her case in chief, Wyatt testified about the damage to her car. The extent of the damage was not directly at issue; instead, the testimony was intended to show the severity of the impact. In response to a question from her attorney,

---

6. Our review for likelihood of prejudice is different in a criminal case because the defendant's constitutional rights are at stake. For example, the Court of Appeals noted in *King v. State*, 287 Md. at 537–39, 414 A.2d 909, that exclusion of an entire class of jurors who hold a certain belief "implicates the right to be tried by a jury which is representative of the community." Such concerns are not at issue in a civil proceeding.

Wyatt inadvertently stated that the repair estimate was prepared by "State Farm." State Farm is the name of Wyatt's insurance carrier. Johnson made no immediate objection to the statement, then raised the issue a few moments later during a conference at the bench. Johnson's counsel argued that Wyatt's remark "leaves the jury with the impression that my client is insured with State Farm, which is not true." At Johnson's request, the court instructed the jury that "State Farm Insurance Company is the insurance company of Ms. Wyatt." Wyatt contends that the court's instruction was "highly prejudicial," and "went far beyond anything needed to correct the record." In her view, the court should have struck the comment about insurance, and reminded the jury that insurance was not to be considered.

Because we reverse on other grounds, we decline to address this issue. In view of appellant's assertion that she suffered prejudice here, we think it highly unlikely that she will commit the same error during the course of a new trial.

### V

Finally, Wyatt contends that the trial court erred by excluding an out-of-court statement she made at the scene of the accident. As this issue may arise again on remand, we shall address it for the benefit of the court and the parties.

During Wyatt's direct testimony, she described what happened after she regained control of her vehicle:

> After I pulled into that parking lot, I got out of the car and looked around on the street to see what hit me, what happened.... There is a big grass patch from the parking place into Brock Bridge and Mr. Johnson, the gold car, actually was back in the street between other cars like he was ready to go and I just said, "Oh, my God, he is going to try to get away." So I ran—

Johnson objected to the testimony, and the court struck everything after the words "Mr. Johnson." The judge explained that "[i]t's her conclusion. It's not a recitation of fact."

Although non-expert opinions historically have been excluded from evidence, lay opinions that are rationally based on the perceptions of the witness and helpful to the trier of fact may be admissible. *Bruce v. State*, 328 Md. 594, 630, 616 A.2d 392, (1992) *cert. denied,* —— U.S. ——, 113 S.Ct. 2936, 124 L.Ed.2d 686 (1993); 6 McLain, Maryland Evidence 701.1, at 192–95 (1987). *See also* Md. Rule 5–701. Such testimony has generally been admitted where a description of all the transient physical conditions—tone of voice and facial expression, for example—cannot adequately convey what the witness observed. *See People's Drug Stores v. Windham,* 178 Md. 172, 180–81, 12 A.2d 532 (1940); *Brown v. Rogers,* 19 Md.App. 562, 569, 313 A.2d 547 (1974). Nonetheless, a lay opinion is not admissible unless the witness had sufficient knowledge to form a rational opinion. *Ingalls v. Trustees of Mt. Oak Methodist Church,* 244 Md. 243, 257–58, 223 A.2d 778 (1966). Whether to allow or exclude the conclusions of a lay witness is left to the sound discretion of the trial court. *Yeagy v. State,* 63 Md.App. 1, 22, 491 A.2d 1199 (1985).

In the case at hand, Wyatt's statement that Johnson "is going to try to get away" was merely conjecture. Wyatt did not have knowledge of Johnson's intentions, and there was nothing in his actions that could not be adequately explained to the jury by factual observations. Moreover, the import of appellant's testimony went to the issue of liability, not damages. As we noted earlier, liability was directed. The trial court did not abuse its discretion in refusing to admit Wyatt's out-of-court statement.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED.**

**CASE REMANDED TO THE CIRCUIT COURT FOR A NEW TRIAL AS TO DAMAGES.**

**COSTS TO BE PAID BY APPELLEE.**