452

656 A.2d 795

**In re VANESSA C.**

**No. 465, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

April 6, 1995.

George Lipman, Asst. Public Defender (Stephen E. Harris, Public Defender, and George E. Burns, Jr., Asst. Public Defender, on the brief), Baltimore, for appellant.

Donna R. Heller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MOYLAN, FISCHER and DAVIS, JJ.

FISCHER, Judge.

Lydia C., appellant and mother of Vanessa C., appeals a decision of the District Court of Maryland for Montgomery County, sitting as a juvenile court (Moore, J.), finding Vanessa to be CINA (child in need of assistance) and placing her in foster care.

Appellant raises two issues for our consideration:

I. Did the continuation of custody of the child for more than thirty days, without an adjudication, violate Courts Article Section 3–815?

II. Did the trial court improperly admit the psychiatric discharge summary into evidence?

Following the filing of our opinion in this case on February 3, 1995, the Attorney General filed a motion for reconsideration. In view of the cogent arguments advanced by that office, we have decided to modify our opinion to some extent. We are, therefore, withdrawing the opinion as filed and substituting in its place this opinion.

## FACTS

During the late evening hours of September 5, 1993, an ambulance responded to an emergency 911 telephone call from a hotel regarding appellant, Lydia C. Shortly after the ambulance's arrival, Lydia gave birth to Vanessa. Mother and daughter were taken to Holy Cross Hospital in Montgomery County. Vanessa weighed slightly over five pounds at birth and required a cardiorespiratory monitor and tube feeding.

Early in Vanessa's hospital stay, Dr. Marilea Miller, a neonatologist and director of the nursery at the hospital, became concerned about certain aspects of Lydia's behavior. Dr. Miller testified that the day after Vanessa was born, Lydia told the nurses that an incorrect footprint was on her baby's card. Despite assurances from the nurses, the card disappeared and Lydia was thought to be responsible. Lydia then told Dr. Miller that Lydia believed that employees of the hospital were poking Vanessa with pins and otherwise tortur-

ing her. In addition, despite the fact that Vanessa was premature, Lydia insisted upon being discharged along with Vanessa from the hospital. This was not possible because the baby had feeding problems. In view of Lydia's insistence that the child be discharged after these problems were explained to Lydia, Dr. Miller stated that "it became clear to [her] that there was a difficulty in perception of what reality was at that point in time."

Dr. Amon Gonzalez testified that he administered to Lydia, on March 6, 1989, on behalf of the Immigration Service, a test for the AIDS virus. Lydia later came to see him on November 7, 1991, with a complaint that a roommate had caused her to contract "glaucoma or melanin." Dr. Gonzalez stated that his physical examination of Lydia was entirely negative, and the only abnormality was in the "deletion of thinking that she showed." The doctor saw appellant again on November 18, 1991, and, in response to a somewhat bizarre conversation, he recommended that she see a psychiatrist. Dr. Gonzalez saw appellant on the next occasion in May 1993. She came to see him for a pregnancy test. After he learned that the pregnancy test was positive, he directed her to go to the Germantown Clinic. She returned to Dr. Gonzalez on September 8, 1993, and asked the doctor to ask Holy Cross Hospital to release the baby to her care. She stated that the baby was not getting good care at the hospital, "the nurses were giving her IVs, pricking her fingers."

Dr. Miller testified that she contacted Lydia's sister to determine whether she could offer some help and support for Lydia and received a negative response. Dr. Miller became concerned with the overall situation, the mother was homeless, there was no place for her to go in the event of discharge, and the mother had no means of supporting the baby. Dr. Miller asked the hospital's social worker to contact protective services. She also asked Lydia if she would be willing to spend some time on the psychiatric floor to "try and sort out some of her problems."

Dr. Miller further testified that, subsequent to Lydia's and Vanessa's discharge from the hospital, she came into the hospital on a Saturday and found Lydia with her bags sitting in the hospital cafeteria. Dr. Miller learned that Lydia was there because she had no place to go. Dr. Miller tried to find a shelter for Lydia and when unable to secure such a placement, obtained a hotel room for Lydia for three days. Three days later Dr. Miller paid for one month's rent in a private home for Lydia.

The initial court proceeding began on October 13, 1993, before Judge Louis D. Harrington. At the outset of the hearing, a dispute arose over the admission of certain medical records of Lydia. Those records were of psychiatric evaluations performed when Lydia was at Holy Cross. Lydia claimed a privilege pursuant to Cts & Jud.Proc. § 9–109. Appellant's attorney opposed any continuance and insisted that appellant was entitled to a disposition within 30 days from the shelter care hearing, which was held on September 13, 1993. Counsel for DSS did not wish to proceed without recourse to the psychiatric records and asked for a continuance. A further complicating factor presented itself in the form of Mr. Tyson Tomlinson, who claimed to be the child's father. The clerk volunteered that an hour and one-half was available on November 12, 1993, for the continued hearing.

The case resumed on November 12, 1993, with the Hon. Douglas H. Moore, Jr., presiding. After hearing testimony from Dr. Gonzalez, the court ran out of time and continued the case, over appellant's objections, to December 17, 1993. On December 17, 1993, the case resumed before Judge Moore. Initially, appellant moved to dismiss based upon her perceived right to an adjudication within thirty days. Mr. Tomlinson also moved to dismiss for the reason that Vanessa was not a child in need of assistance because Mr. Tomlinson was prepared to care for Vanessa. Both motions were denied. Dr. Miller; Janice Shabe, a case worker for DSS; Steve Johnson, a volunteer Emergency medical technician; and Tyson Tomlinson and Debbie Tomlinson, his wife, also testified.

At the conclusion of the hearing, the court made a decision that Vanessa was CINA and set a disposition hearing for January 13, 1994. At the January hearing, blood test evidence was introduced to show that Tomlinson was not the biological father of Vanessa. After hearing arguments of counsel, Judge Moore continued Vanessa's care with DSS and declined to return Vanessa to Lydia.

## I.

Initially, Lydia contends that this Court should reverse the district court and give her custody of Vanessa, because Lydia was entitled to an adjudication hearing within thirty days of the order placing Vanessa in shelter care. Md.Code (1974, 1989 Repl.Vol., 1994 Cum.Supp.), § 3–815(d)(4)(i) of the Courts & Judicial Proceedings Article.[1] Section 3–815 states, *inter alia,* "Detention and shelter care shall not be ordered for a period of more than 30 days unless an adjudicatory or waiver hearing is held," with an exception that is not relevant to this case.

Section 3–815 must be read in conjunction with Md.Rules 912 and 914. Rule 912 b.2 states, "Continued detention or shelter care pending the adjudicatory or waiver hearing may not be ordered for a period of more than thirty days." With respect to a continuance of shelter care, Rule 912 c. provides, "The court may, on petition or of its own motion, continue detention or shelter care for a period not longer than thirty days after a denial of a petition for waiver or an adjudicatory hearing." What occurs in the event an adjudicatory hearing is not held within thirty days is covered by Rule 914 b.2. as follows:

> If the respondent is in detention or shelter care, the adjudicatory hearing shall be held within thirty days from the date on which the court ordered continued detention or shelter care. If an adjudicatory hearing is not held within

---

1. All statutory references are to Md.Code (1974, 1989 Repl.Vol., 1994 Cum.Supp.) of the Courts and Judicial Proceedings Article, unless otherwise noted.

thirty days, *the respondent shall be released* on the conditions imposed by the court pending an adjudicatory hearing, which hearing shall be held within the time limits set forth in subsection 1 of this section. [Emphasis supplied.]

In the instant case, a hearing was begun within thirty days, but could not be completed because some witnesses were not available and there was a dispute over admission of medical records. The court summarized the reason for the continuance as follows: "The court is faced with the dilemma of forcing the County to go forward ruling on what could be probably some hearsay evidence and, perhaps, an incomplete record."

Appellant insists that the statute is plain in its meaning and intent and, since an adjudication hearing was not completed within the required thirty days, custody of Vanessa must be given to Lydia.

Appellee points out that the statute on its face does not require that the adjudicatory process be completed within thirty days. It argues that the adjudicatory process may often be complex, requiring testimony of expert witnesses and psychological evaluations of the parties. Appellee also cites § 3–815(h)(4)(i), which requires the local department of social services "to develop a plan within 45 days of placement of a child in a shelter care facility to assess the child's treatment needs...." It would seem incongruous for § 3–815(h)(4)(i) to permit 45 days for development of a treatment plan if the court were required to make a decision within 30 days.

Appellee suggests that the central issue to be determined is whether "shall" as used in § 3–815(d)(4) is mandatory or directory. In *Resetar v. State Bd. of Education*, 284 Md. 537, 547, 399 A.2d 225 (1979), the Court of Appeals stated:

The question of whether a statutory provision using the word 'shall' is mandatory or directory 'turns upon the intention of the Legislature as gathered from the nature of the subject matter and the purposes to be accomplished.'

In our analysis of whether "shall" is mandatory or directory, we must look "upon the intention of the Legislature as gath-

ered from the nature of the subject matter and the purposes to be accomplished." *Hitchins v. City of Cumberland,* 215 Md. 315, 323, 138 A.2d 359 (1958). In *Motor Vehicle Administration v. Shrader,* 324 Md. 454, 467, 597 A.2d 939 (1991), the Court of Appeals held that "dismissal is not the required sanction if a statute or rule does not state that dismissal will result from non-compliance;...."

■ In the instant matter, while the statute provides no sanction for noncompliance, Rule 914 does. The rule provides that "[i]f an adjudicatory hearing is not held within thirty days, the respondent shall be released." In this context, we believe "held" does not mean completed, but, rather that the hearing be initiated within thirty days and completed with a reasonable degree of continuity. By a reasonable degree of continuity, we mean that a hearing once begun must continue, insofar as possible, on a day to day basis until completed. The evil sought to be avoided is the present practice, at least in Montgomery County, of continuing cases, which are in the process of trial, for periods as long as thirty days, thereby prolonging the CINA determination for from three to five months in some cases.

In the case at bar, an adjudication of CINA was eventually made, and, at a disposition hearing on January 13, 1994, the court committed Vanessa to the Department of Social Services and continued her in foster care as recommended by the Department. A review hearing was scheduled for April 6, 1994. We have no information as to the outcome of that hearing or whether it was cancelled as a result of the filing of this appeal. In any event, we believe that the appropriate course at this point is to remand the matter to the continuing jurisdiction of the District Court for Montgomery County, Maryland sitting as a juvenile court.

## II.

■ Appellant next avers that the trial judge erred in admitting into evidence the psychiatric discharge summary.

Section 9–109 provides, *inter alia*, that "a patient ... has a privilege to refuse to disclose, and to prevent a witness from disclosing, communications relating to diagnosis or treatment of the patient's mental or emotional disorder." It goes on to provide, "There is no privilege if: ... (3) In a civil or criminal proceeding: (i) The patient introduces his mental condition as an element of his claim or defense; ...."

The initial hearing was conducted before Judge Harrington and was of short duration. One of the few things accomplished at that time was the acceptance into evidence of the discharge summary of appellant's psychiatric records from Holy Cross Hospital. Initially, the court was reluctant to admit the records. The court was then informed that the records were released to DSS by the Crisis Center and that the Crisis Center had obtained the records from Holy Cross Hospital. It was argued that this amounted to a waiver. Appellant's counsel objected to admission of the summary and insisted that appellant had the right to an evidentiary hearing with respect to whether the privilege was waived. It appears that, while DSS has the burden to show waiver, the court did not require DSS to meet its burden prior to accepting the discharge summary.

While admission of the summary appears to have been in error, we do not believe that reversal is thereby mandated. It appears to us that the admission of the summary was harmless. "[I]t is firmly established that the complaining party has the burden of showing prejudice as well as error." *Beahm v. Shortall*, 279 Md. 321, 330, 368 A.2d 1005 (1977).

Before determining the child was CINA, the court made an exhaustive summation of the evidence it considered. With respect to appellant's mental health, he referred to Dr. Gonzalez and Dr. Miller's testimony. He also noted the observations of Mr. Tomlinson, but there is no indication the judge relied on the discharge summary. We are convinced, after reading the trial judge's opinion, that the error in admitting the discharge summary did not affect the result.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.

COSTS TO BE PAID BY APPELLEE.